JANELLE RITZHEIMER, Plaintiff-Appellant, v. INSURANCE COUNSELORS, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0593

Opinion filed August 8, 1988.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (James E. De-Franco and Karen E. Mason, of counsel), for appellant.

Robert J. Hillebrand and Timothy C. Stubblefield, both of Hillebrand & Stubblefield, P.C., of Belleville, for appellees.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Janelle Ritzheimer, filed an action in the circuit court of St. Clair County to recover damages for injuries she sustained when

she was fired from her job after informing her employer that she had become pregnant. Plaintiff's complaint contained two counts. Count I asserted a cause of action against defendant Insurance Counselors, Inc., her employer, for, *inter alia*, deprivation of her right to be free from discrimination on the basis of sex as guaranteed by article I, section 17, of the Illinois Constitution of 1970. Count II alleged intentional infliction of emotional distress by defendant Paul Roesch, her supervisor. On a motion filed by defendants, plaintiff's complaint was dismissed with prejudice. The basis for the circuit court's order of dismissal was that plaintiff's claims were barred by the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). The court reached this conclusion even though, as we shall discuss, plaintiff and her employer were not subject to the provisions of that statute. Plaintiff now appeals. We reverse and remand.

■ In reviewing the propriety of an order granting a motion to dismiss, all well-pleaded facts in the complaint must be taken as true. (*Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 757, 502 N.E.2d 1096, 1098.) Count I of the complaint at issue here alleged that plaintiff was employed by defendant Insurance Counselors, Inc., a corporation which maintained its principal place of business in Belleville, Illinois. On or about July 14, 1986, plaintiff advised "defendant's employees, officers, or agents" that she was pregnant. Two days later, on July 16, 1986, defendant Paul Roesch, her supervisor, fired plaintiff from her job. According to the complaint, Roesch was, at the time, an "agent, officer, and employee" of defendant Insurance Counselors, Inc., and was "acting in the scope of his duties and on behalf of [defendant Insurance Counselors, Inc.,]" when he terminated plaintiff. The complaint further indicated that plaintiff was terminated for no reason other than her pregnancy.

Although count I seems to be phrased in terms of an action for retaliatory discharge, plaintiff asserts that what she was actually attempting to do in that count was to assert a direct cause of action for deprivation of her rights under the Illinois Constitution of 1970. In particular, plaintiff asserts that her termination violated article I, section 17, of the 1970 Illinois Constitution, which provides:

"All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.

These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish reasonable exemptions relating to these rights and provide addi-

tional remedies for their violation." (Ill. Const. 1970, art. I, §17.)

Count I alleges that plaintiff's termination also violated sections 1, 2, and 18 of article I of the Illinois Constitution of 1970, but plaintiff does not purport to rely on those provisions on this appeal.

Plaintiff alleges in count I that as a result of her termination in violation of her constitutional rights, she has suffered damages "through her inability to provide for her family, emotional suffering, lost wages and other damages." For this, she seeks compensation in the amount of $10,000. Plaintiff also claims that in terminating her from her job, defendant Insurance Counselors acted willfully, wantonly and maliciously and that she is therefore entitled to punitive damages as well.

In count II of her complaint, plaintiff alleges that defendant Roesch was "an officer and employee of defendant Insurance Counselors, Inc.," and that he learned of plaintiff's pregnancy on July 14, 1986. Thereafter, he allegedly "engaged in an outrageous course of conduct to abuse, demean, and humiliate plaintiff for the purpose of causing her emotional distress." Plaintiff asserts that Roesch's conduct was "willful, wanton, and malicious," and that as a direct and proximate result of that conduct, she has suffered "severe emotional distress." As in count I, plaintiff seeks compensatory damages of $10,000, plus an award of punitive damages.

Plaintiff's complaint was filed on December 29, 1986. Defendants were personally served less than two weeks later, on January 9, 1987. Plaintiff then waited for a response. Nothing happened. Three months passed without an appearance or pleading being filed by either of the defendants. Accordingly, on April 9, 1987, plaintiff moved for entry of a default judgment pursuant to section 2—1301 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301). The following day, defendants filed a motion to dismiss plaintiff's complaint.

As grounds for their motion to dismiss, defendants argued that the gist of counts I and II was simply that plaintiff had been wrongfully terminated from her job based on sexual discrimination. Under defendants' analysis, the exclusive remedy provided for such claims is set forth in the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 et seq.). Accordingly, defendants argued that plaintiff was precluded from bringing an action in circuit court directly under the State Constitution or common law. Defendants advanced this argument even though, as stipulated by the parties, defendant Insurance Counselors had fewer than 15 full-time employees and the Illinois Human Rights Commission had therefore refused to entertain plaintiff's grievances.

Following a hearing, the circuit court denied plaintiff's motion for a default judgment and granted defendants' motion to dismiss. In so doing, the court agreed with defendants' characterization of plaintiff's counts as setting forth a claim for unlawful sexual discrimination. The court further agreed that the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 et seq.) provided the sole remedy for such discrimination. Invoking section 8—111(C) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(C)), which provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act," the court apparently reasoned that it was therefore barred from considering plaintiff's claims. While not expressly stated in the circuit court's order of dismissal, we regard that order as having been entered pursuant to section 2—619(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(1)), which provides for the involuntary dismissal of a complaint on defendant's motion where the court lacks subject matter jurisdiction. Plaintiff's request that the circuit court reconsider its order was denied, and she has appealed.

■ As we have indicated, count I of plaintiff's complaint asserts a direct cause of action against defendant Insurance Counselors under article I, section 17, of the Illinois Constitution of 1970, which guarantees to all persons "the right to be free from discrimination on the basis of *** sex in the hiring and promotion practices of any employer." (Ill. Const. 1970, art. I, §17.) There was no dispute at the trial level that to terminate a woman because she is pregnant constitutes "discrimination on the basis of *** sex." (See *Florsheim Shoe Co. v. Illinois Fair Employment Practices Comm'n* (1981), 99 Ill. App. 3d 868, 873, 425 N.E.2d 1219, 1223.) Nor was there any dispute that the reference to "hiring and promotion practices" in article I, section 17, includes, as in this case, an employer's decision to fire someone.

Although not raised as an issue on appeal, we must acknowledge that in *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 883-84, 458 N.E.2d 985, 989, the Appellate Court, First District, did hold that the constitutional prohibition against discrimination in hiring and promotion practices does not include termination and discharge. (See also *Yount v. Hesston Corp.* (1984), 124 Ill. App. 3d 943, 949, 464 N.E.2d 1214, 1219 (following *Thakkar*).) While a panel of this court has held that the phrase "hiring and promotion practices" as used in article I, section 17, does not include all employment practices (see *Briggs v. Lawrenceville Industries, Inc.* (1985), 136 Ill. App.

3d 1073, 1074, 484 N.E.2d 347, 348, citing *Greenholdt v. Illinois Bell Telephone Co.* (1982), 107 Ill. App. 3d 748, 752, 438 N.E.2d 245, 248), we disagree with *Thakkar* and hold that sexually discriminatory discharge and termination do fall within that constitutional prohibition. Our conclusion rests on several factors.

The first is the language of the constitutional provision itself. The meaning of a constitutional provision depends on the common understanding of the citizens who, by ratifying the constitution, gave it life. This understanding, however, is best determined by referring to the common meaning of the words used. (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 492-93, 470 N.E.2d 266, 270.) In *Thakkar*, the court seems to have understood "hiring practices" to mean simply practices related to the initial process of hiring a worker. The word "hire," however, has been defined as including not only "the act of hiring" and "an instance of such act," but also the "state of being hired." (*State v. Pitzenbarger* (1965), 6 Ohio Misc. 134, 137, 214 N.E.2d 849, 851.) Accordingly, we believe that "hiring practices" is properly understood to embrace practices which relate to "the state of being hired." The "state of being hired" ends, of course, when one is fired or is otherwise terminated from his or her job. Accordingly, we think that a person of ordinary intelligence would understand "hiring practices" to include those practices which relate to an employee's firing or discharge.

A similar argument can be made with respect to the reference to "promotional practices." Just as "hiring practices" would, under common usage, seem to include practices which concern firing or termination, we believe that "promotion practices," when given its plain meaning, seems to embrace practices which result in demotion, and there can be no greater demotion than when one is fired.

Such a construction is further supported when one considers the purposes which article I, section 17, of the Illinois Constitution of 1970 was intended to serve. The rule of statutory construction which requires a reviewing court to interpret a statute in such a manner as to promote its essential purpose is equally applicable to the interpretation of constitutional provisions. (*Greenholdt v. Illinois Bell Telephone Co.* (1982), 107 Ill. App. 3d 748, 753, 438 N.E.2d 245, 249.) The purpose of article I, section 17, is to provide for equality of employment opportunity and upgrading based on merit. (107 Ill. App. 3d at 754, 438 N.E.2d at 249-50.) In our view, the goal of equality of employment opportunity and upgrading based on merit is thwarted just as surely when one is fired or demoted for a discriminatory reason as it is when discriminatory criteria are employed in the initial hiring

and promotion of a worker. To hold that hiring and promotion does not include demotion and firing would thus yield an unjust and nonsensical result.

That discriminatory firing and demotion, like discriminatory hiring and promotion, are covered by article I, section 17, seems to have been assumed by our General Assembly. To secure and guarantee the rights established by section 17 of article I, and other provisions of the Illinois Constitution of 1970 not relevant here, the General Assembly enacted the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). (Ill. Rev. Stat. 1985, ch. 68, par. 1—102(C).) In that Act, the General Assembly specified that a private employer could not refuse to hire, segregate, or act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure, or terms, privileges or conditions of employment on the basis of unlawful discrimination. (Ill. Rev. Stat. 1985, ch. 68, par. 2—102(A).) We fail to see how this expansive list, including the express references to renewal of employment, discharge, and tenure, can be squared with the restrictive definition of "hiring and promotion practices" adopted by the court in *Thakkar*.

At the very least, the meaning of "hiring and promotion practices" as used in article I, section 17, is ambiguous. To resolve ambiguities which may remain after consulting the language of a constitutional provision, the meaning which the delegates to the constitutional convention attached to that provision before sending it to the voters for ratification is relevant. (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 493, 470 N.E.2d 266, 270.) The interpretation of section 17 advanced by the delegates who voted to adopt it is clearly consistent with the construction we have adopted today. Section 17 of article I was presented to the delegates to that convention by Mr. Louis Wilson, principal spokesman for the Bill of Rights Committee. During Wilson's presentation, he was questioned as to why the words "hiring and promotion practices" were used instead of the more general term "employment." In responding, Wilson stated:

> "Well, you are raising a question, I believe, basically of language rather than thought, perhaps. Certainly our thought was to prohibit discrimination in the employment—in employment." (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1595-96.)

When asked by delegate Connor what he meant by employment in this context, the following exchange took place:

> "MR. WILSON: It certainly means hiring. It certainly

means—to me, at least—it means the treatment that the employee gets after he is hired, the conditions under—

MR. CONNOR: Does it include separation?

MR. WILSON: What's that?

MR. CONNOR: Does it include separation, lay-offs, et cetera?

MR. WILSON: I would certainly think so, Mr. Connor, yes." (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1596.)

The import of this explanation could not be more clear.

■ Having concluded that sexual discrimination in the firing of an employee falls within the prohibition of article I, section 17, we turn to the question of whether plaintiff in this case may bring an action for damages directly under that provision. The second paragraph of section 17 of article I expressly states that the rights secured by section 17 are "enforceable without action by the General Assembly." (Ill. Const. 1970, art. I, §17.) That paragraph further provides, however, that "the General Assembly by law may establish reasonable exemptions relating to these rights and provide additional remedies for their violation." (Ill. Const. 1970, art. I, §17.) Pursuant to this authority, the General Assembly has established such "reasonable exemptions" and "additional remedies." It has done so through promulgation of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 882, 458 N.E.2d 985, 988.

Section 8—111(C) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(C)) provides:

"Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."

In accordance with this provision, the courts have now uniformly recognized that where the Act applies, it is the exclusive source for redress of alleged civil rights violations (*Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315), and a covered employee may not bring a private cause of action to recover damages for violation of his rights under article I, section 17. *Briggs v. Lawrenceville Industries, Inc.* (1985), 136 Ill. App. 3d 1073, 1075, 484 N.E.2d 347, 349; *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 546, 472 N.E.2d 596, 603; *Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 882, 458 N.E.2d 985, 988-89; see also *Yount v. Hesston Corp.* (1984), 124 Ill. App. 3d 943, 949, 464 N.E.2d 1214, 1218 (Act invoked to bar independent, private cause of action

under article I, section 19, for dismissal based on mental handicap).

■ The case *sub judice*, however, does not fall within section 8—111(C), the exclusive remedy portion of the Illinois Human Rights Act. As indicated in the text quoted above, that section governs "civil rights violations." With respect to discrimination in employment, the phrase " '[c]ivil rights violation' includes and shall be limited to only those specific acts set forth in Sections 2—102, 2—103" of the Act. (Ill. Rev. Stat. 1985, ch. 68, par. 1—103(D).) Section 2—102(A) of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 2—102(A)), dealing with the discharge of an employee on the basis of unlawful discrimination, applies, by its terms, only to "employers." The term "employer," however, is not used generically, but in a narrow and specifically defined sense. For the purposes of the Act, an "employer" is any person "employing 15 or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation." (Ill. Rev. Stat. 1985, ch. 68, par. 2—101(B)(1)(a).) As we have indicated, the parties stipulated at the trial court level that defendant Insurance Counselors had fewer than 15 employees, and no claim has been made that it meets any of the other definitions of "employer" set forth in the Act. Because defendant Insurance Counselors was not a covered "employer," its gender-based discrimination against plaintiff could not, by definition, constitute a "civil rights violation" under the foregoing provisions. Correspondingly, the exclusive remedy provision set forth in section 8—111(C) of the Act can have no application.

Under these circumstances, to hold, as did the trial court, that plaintiff's claim is barred by the provisions of the Act requires that the Act's clear language be ignored. Such a construction would also have the effect of leaving plaintiff with no legal recourse at all, a result which would defeat the intentions of the drafters of article I, section 17. As noted in *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 544, 472 N.E.2d 596, 601:

> "A review of the legislative debates at the Sixth Illinois Constitutional Convention of 1969-1970 pertaining to article I, section 17 (discussed as section 22), and the amendments proposed thereto (see 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1591-1613), reflects clearly that the drafters intended to provide a direct cause of action in the circuit courts to enforce the rights enumerated in the first paragraph *where those rights were not protected by legislation.*" (Emphasis in original.)

Where, as here, the rights in question are not protected by legislation, the only conclusion which can reasonably be squared with the

language of article I, section 17, the debates on that provision, and the text of the Human Rights Act is that a private right of action for damages, such as the one asserted by plaintiff, remains.

In an attempt to resist this conclusion, defendant cites a passage from the debates on article I, section 17, at the constitutional convention in which delegate Wilson explained:

"We felt that the legislature should be empowered to provide for reasonable exemptions here where the balancing would be the other way around, if you please, and where in these situations we felt that the greater value lies in a freedom of choice on the part of the employer or, for example, on the part of a person furnishing the housing.

Now, let me give you an idea of some of these possible exemptions which we feel are reasonable and which the legislature would be empowered to enact. Excuse me. For example, the right of religious organizations to employ or provide housing for members of their own faith only. *** The right of truly private clubs to provide housing for their own members only would be another example, in the committee's view, of a reasonable exemption. And then we run into that category which has come in a popular jargon to be known as the exemption relating to Mrs. Murphy's boarding house—that type of exemption, or—and I think under the Federal Housing Act this runs up to as much as a building with four apartments or four flats in it in which one of the apartments is actually owned—actually occupied by the owner as his own residence. Another example of a reasonable exemption would be that relating to small employers—employers, that is, of small numbers of employees. Just what this number would be, I don't know, of course; but in all these areas it was the committee's feeling that the relationship between landlord and tenant or between employer and employee was of such a[n] intimate and personal nature that the greater value there lies in leaving freedom of choice to the landlord or to the employers, as the case might be. Hence, we have provided that the legislature may enact these exemptions. It's not required to do so, but it has the—has the power under the clause to do so." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1592-93.

In our view, nothing in this explanation aids the position of defendant Insurance Counselors in this case. While the legislature may have had the power to limit or eliminate claims for gender discrimination against small employers, such as defendant Insurance

Counselors, the fact remains that it did not do so. Nothing in the Illinois Human Rights Act suggests that small employers should be left to discriminate as they wish. Rather than excuse any class of employers from its obligations under article I, section 17, of the Constitution, what the Act does instead is simply to impose greater restrictions on and provide additional remedies for claims of discrimination against employers of a certain size.

■■ Because the Act does not purport to reach discriminatory practices by smaller employers, the Act cannot be construed as preempting a claim of gender discrimination against such an employer asserted directly under article I, section 17, of the 1970 Illinois Constitution. To be sure, the legislative debates which preceded enactment of the Human Rights Act contained some references to the effect that the statute would eliminate private rights of action (see *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 546, 472 N.E.2d 596, 603), but those references do not attempt to distinguish situations involving covered employers from those, as in this case, where the employer is not covered. In any event, it is a fundamental tenet of statutory construction that where the language used in a statute is unambiguous, examination of the legislative history is not appropriate. (See *Patton v. Industrial Comm'n* (1986), 147 Ill. App. 3d 738, 741, 498 N.E.2d 539, 541.) This is such a case.

Given that the Act does not bar a direct action for damages by plaintiff here under article I, section 17, of the Illinois Constitution of 1970, count I of plaintiff's complaint should not have been dismissed. We likewise find improper the circuit court's dismissal of count II. That count, which alleged intentional infliction of emotional distress, was construed by the circuit court as merely seeking recovery for sexual discrimination under a different guise. Because the court had concluded that plaintiff was barred by the Illinois Human Rights Act from bringing an independent cause of action for sexual discrimination, it reasoned that count II, like count I, could not be allowed to stand. As we have just held, however, the circuit court's view as to the preclusive affect of the Illinois Human Rights Act was, on the circumstances present here, erroneous.

■■ The circuit court's analysis as to count II was incorrect for another reason as well. While claims for "civil rights violations" based on sex discrimination must be brought pursuant to the Illinois Human Rights Act where the Act applies, a situation not present here, intentional infliction of emotional distress is a common law tort theory, not a "civil rights violation" as defined by the Act, and does not depend on the policies or provisions of the Act for its viability. To

state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts which, if true, would establish that conduct by defendant was extreme and outrageous, that the emotional distress suffered by the plaintiff was severe, and that the defendant acted either intentionally to cause distress or with knowledge of the fact that severe emotional distress would be certain or substantially certain to result. (*Harris v. First Federal Savings & Loan Association* (1984), 129 Ill. App. 3d 978, 980-81, 473 N.E.2d 457, 459.) These elements are quite different from those necessary to establish a "civil rights violation" under the Act, and they may be present even where a "civil rights violation" based on sex discrimination cannot be shown.

In this case, for example, the conduct complained of did occur in an employment setting, and it is alleged to have begun when plaintiff advised her supervisor that she had become pregnant. The most one can say about this, however, is that count II involved sex and employment. Discrimination does not necessarily have anything to do with it. Indeed, it may very well be the case that plaintiff's supervisor was completely indiscriminate as to the targets for the outrageous conduct in which he is alleged to have engaged. We therefore do not construe count II as merely being a veiled attempt to assert a "civil rights violation" within the meaning of the Illinois Human Rights Act. (See *Clay v. Quartet Manufacturing Co.* (N.D. Ill. 1986), 644 F.Supp. 56, 61; compare *Anderson v. Pistner* (1986), 148 Ill. App. 3d 616, 619-20, 499 N.E.2d 566, 567-68.) Accordingly, even if the Human Rights Act applied in this case, which it does not, we do not think it would bar an independent, common law claim for intentional infliction of emotional distress such as the one asserted by plaintiff in count II.

Defendants do not dispute that count II adequately alleges the basic elements of an action for intentional infliction of emotional distress. Their sole objection to count II is that it should be barred by the Illinois Human Rights Act. Because we have found that argument to be untenable and because we have found no other basis upon which the circuit court's dismissal order can be sustained, that order must be reversed.

For the foregoing reasons, the judgment of the circuit court of St. Clair County dismissing with prejudice counts I and II of plaintiff's complaint is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LEWIS and CALVO, JJ., concur.