Mary **SEEHAWER,** Plaintiff,

v.

**MAGNECRAFT ELECTRIC COMPANY**
and James A. Steinback, **Defendants.**

No. 88 C 7102.

United States District Court,
N.D. Illinois, E.D.

Jan. 24, 1989.

Michael J. Leech, Hinshaw Culbertson Moelmann Hoban & Fuller, Chicago, Ill., for plaintiff.

Gerald C. Peterson, Winston & Strawn, Chicago, Ill., for defendants.

---

1. For purposes only of these outstanding motions, the parties do not dispute the facts set

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Mary Seehawer brings this three-count action charging defendants Magnecraft Electric Co. ("Magnecraft") and James A. Steinback, Magnecraft's president, with breach of contract and violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e–1 *et seq.* Seehawer moves to strike four affirmative defenses. Defendants move to dismiss or, alternatively, for summary judgment on the breach of contract claim. For the reasons set forth below, we grant in part Seehawer's motion to strike and grant in part defendants' motion for summary judgment.

### I. Factual Background [1]

On March 6, 1967, Magnecraft hired Seehawer to fill the position of executive secretary. In or about 1977, she became Steinback's personal secretary. In late 1981 or early 1982, Magnecraft issued an employee handbook entitled a Manual of General Policy and Rules ("Manual") which provided in pertinent part:

> To avoid misunderstanding, disagreements and grievances, the following rules, regulations and policies are hereby stated for Magnecraft Electric Company, eligible employees, Chicago, Illinois. Art. I, § 1.
>
> \* \* \* \* \* \*
>
> There shall be no discrimination in interviewing, or hiring of applicants for employment and no discrimination against employees during and after the trial period of employment because of color, race, sex, marital status, age, craft, emotional or handicapped, religious or political beliefs. Art. III, § 1.
>
> Guarantees against discrimination shall in addition apply to promotion, apprenticeship, job training, shift assignment,

forth in this section.

layoffs, rehires, transfers, and discharge. Art. III, § 2.

Additionally, the Manual limited Magnecraft's power to terminate its employees:

> Employees shall be discharged or disciplined only for just cause. Art. XXV, § 2.

Finally, the Manual established a grievance procedure for handling employee-management disputes. Art. XXVI, §§ 1, 2. The Manual contained the signatures of Steinback and F.E. Splitt, a vice-president.

On January 12, 1982, Seehawer signed an Employee Statement which, despite the Manual provision to the contrary, suggested that Magnecraft enjoyed unlimited discretion to terminate its employees:

> In consideration of my employment, I agree to conform to the rules, regulations and policies of Magnecraft Electric Company, and my employment and compensation can be terminated, with or without cause and notice, at any time, at the option of the Company or myself. I understand that no manager or representative of Magnecraft Electric Company, other than the president or vice president ... has the authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

It appears from other text in the Statement that Seehawer received the Manual at the same time.[2]

On October 21, 1986, Steinback terminated Seehawer, telling her that she had mishandled two assignments and that she no longer "fit his image" of an executive secretary. Steinback refused Seehawer's request for placement in another position. On past occasions, Steinback had provided alternative employment to terminated male employees.

Seehawer filed age and sex discrimination charges with the Illinois Human Rights Department and the Equal Employment Opportunity Commission. On February 22, 1988, she withdrew the charge before the Illinois Human Rights Department and continued to seek relief in the EEOC. The EEOC issued a Right to Sue Notice, and Seehawer filed this action charging age discrimination in violation of the ADEA (Count I), gender discrimination in violation of Title VII (Count II) and breaches of various Manual provisions (Count III). In their answer, defendants plead five affirmative defenses, four of which Seehawer moves to strike. Defendants move for judgment on Count III. We first turn to defendants' motion.

## II. The Breach of Contract Claims

In Count III, Seehawer alleges that defendants breached three promises set forth in the Manual—not to engage in age or sex discrimination and to terminate only for just cause. Defendants contend that these state law claims arising out of alleged discrimination are preempted by the Illinois Human Rights Act ("IHRA"), Ill.Rev.Stat. ch. 68, ¶ 1–101 *et seq.* (1987), and that Seehawer was terminable at-will.

### A. Age and Gender Discrimination

■ Paragraph 8–111(C) of the IHRA establishes the preemptive effect of the Act:

> Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.

An individual must pursue any civil rights violation claim through specified administrative mechanisms and cannot seek relief in the courts. It is a civil rights violation within the meaning of this preemption provision when any employer in the exercise of its power to discharge discriminates against an employee on the basis of age or sex. ¶¶ 1–103(D), 1–103(Q), 2–102(A).

The central issue here is whether Seehawer's breach of contract claim falls within the reach of the preemption provision. Defendants characterize the claim as nothing more than an attempt to assert a civil

---

**2.** The last paragraph of the Statement reads: I acknowledge receipt of the Magnecraft Electric Company employee Manual of General Policies and Rules. Unless I notify you within ten (10) days from this date, you may assume that I have read the manual, and that I understand the rules, regulations and policies, and have no questions.

rights violation under the guise of a breach of contract claim. Seehawer contends that the claim arises from a contract and exists independent of the IHRA and civil rights laws in general. The handful of cases applying the preemption provision to various other state law causes of action leads us to conclude that Seehawer's claim is preempted.

In *Mein v. Masonite Corp.*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985), the only Illinois Supreme Court pronouncement on the preemptive effect of the IHRA, the court held that a former employee must pursue the comprehensive procedures of the IHRA for a claim of wrongful discharge in violation of the public policy against age discrimination:

> It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations ... [T]he legislature intended by the Act to avoid direct access to the courts for redress of civil rights violations. *Id.*, 92 Ill.Dec. at 504, 485 N.E.2d at 315.

The court did not explain its implicit, and it appears unassailable, conclusion that a claim of discrimination in a discharge decision falls within the IHRA even when framed as a wrongful discharge tort.

Other plaintiffs' attempts to raise allegations of discrimination via other common law torts without first seeking relief through the mechanisms of the IHRA have met mixed fates. In *Anderson v. Pistner*, 148 Ill.App.3d 616, 102 Ill.Dec. 9, 499 N.E.2d 566 (1st Dist.1986), the plaintiffs brought a claim of tortious interference with contractual relations and prospective business advantage and alleged that they were terminated because "defendants desired 'to solidify their own personal control over [Montgomery Ward] by eliminating experienced capable employees such as the plaintiffs who might disagree with their business decisions.'" *Id.*, 102 Ill.Dec. at 10, 499 N.E.2d at 567. The court found this claim preempted by the IHRA because the complaint contained numerous references to "older employees" and, "even assuming ... that a nondiscriminatory motive can be ascribed to defendants' decision ... it is apparent that that decision had a discriminatory effect." *Id.* at 12, 499 N.E. 2d at 569. The court viewed the IHRA as casting a wide net over any claim founded on discriminatory treatment or effect, regardless of how the plaintiff characterizes it in the complaint.

Recently, another district of the Illinois Appellate Court held that the IHRA does not preempt claims of intentional infliction of emotional distress even if defendant's actions might have been motivated by unlawful discrimination. In *Ritzheimer v. Insurance Counselors, Inc.*, 173 Ill.App.3d 953, 123 Ill.Dec. 506, 527 N.E.2d 1281 (5th Dist.1988), the plaintiff claimed that she was terminated due to her pregnancy and, in a second count, that one of the defendants, after learning of her condition, engaged in outrageous conduct in order to cause her emotional distress. *Id.*, 123 Ill. Dec. at 508, 527 N.E.2d at 1283. The appellate court held that the IHRA preempted neither claim because defendants were not "employers" within the meaning of the Act. Further, a claim of intentional infliction of emotional distress is never preempted because the plaintiff need not present evidence of discriminatory intent or effect to prevail:

> The most one can say about this, however, is that count II involved sex and employment. Discrimination does not necessarily have anything to do with it. Indeed, it may very well be the case that plaintiff's supervisor was completely indiscriminate as to the targets for the outrageous conduct in which he is alleged to have engaged. We therefore do not construe count II as merely being a veiled attempt to assert a "civil rights violation" within the meaning of the [IHRA]. *Id.* at 514, 527 N.E.2d at 1289.

Without this essential element of discrimination, the claim did not implicate the policies of the IHRA and accordingly did not fall within its reach. *Accord, Clay v. Quartet Mfg. Co.*, 644 F.Supp. 56, 61 (N.D. Ill.1986) ("*Mein* contains no support for the principle that IHRA preempts all employment-related torts ... [The rule is] that

common law claims predicated on the policies or provisions of IHRA are barred by IHRA").

The implicit proposition of law that runs through these decisions is that the IHRA preempts any state law claims in which the plaintiff must prove discriminatory motive or impact. The stated policy of the IHRA is "[t]o secure for all individuals within Illinois the freedom from discrimination because of race, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment." Ill.Rev.Stat. ch. 68, ¶ 1–102(A) (1987). In each of the decisions summarized above, the court scrutinized the complaint to determine whether unlawful discrimination as defined by the IHRA was central to the claim, however labelled. When the court found such discrimination, as in *Anderson* and *Mein*, the IHRA barred the claim. When it did not, as in *Ritzheimer* and *Clay*, the courts had jurisdiction to grant relief.

Age and gender are central to Seehawer's charge that defendants breached the Manual's non-discrimination provisions. She seeks relief for damages suffered from the type of discrimination that the IHRA proscribes. The only reason she is able to frame her request for relief in breach of contract terms is that the Manual contains the non-discrimination provision. To allow Seehawer to circumvent IHRA administrative procedures *on the sole basis that the employer promised to abide by the laws against discrimination* would be to direct to the courts many of the claims that the Illinois legislature intended the Human Rights Department to resolve. Seehawer has presented no support for such a wholesale reallocation of jurisdiction. Accordingly, we grant judgment on the pleadings in favor of the defendants on Seehawer's

breach of contract claim insofar as that claim rests on alleged discrimination.[3]

### B. Termination Without Just Cause

■ Defendants are not entitled to judgment on that portion of Seehawer's breach of contract claim in which she charges breach of a promise to terminate only for just cause. The IHRA does not preempt such claims. *Pioneer Life Insurance Co. v. Woodard,* 152 Ill.App.3d 236, 105 Ill.Dec. 361, 368, 504 N.E.2d 230, 237 (2d Dist. 1987). In *Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the Illinois Supreme Court held that an employee handbok could transform a noncontractual employment relationship into a contractual one "if the traditional requirements for contract formation are present." An employee's continuing to work after learning of a new employment policy constitutes acceptance under the law of contracts. *Id.,* 106 Ill.Dec. at 12, 505 N.E.2d at 318.

We are faced with two simultaneous and seemingly conflicting "offers" to Seehawer. The Manual, upon which Seehawer primarily relies in opposition to summary judgment, promises termination only for just cause. The Statement, upon which defendants rely in support of summary judgment, appears to disclaim any such promise. For two reasons, this apparent inconsistency precludes summary judgment. First, the provisions can be reconciled in Seehawer's favor. As we recently stated, "When faced with inconsistent or conflicting contractual language, we give effect to the interpretation of that language that best reconciles and harmonizes each provision with the remainder of the contract." *Goldberg v. Hilltop Apartments, Inc.,* 684 F.Supp. 199, 200 (N.D.Ill. 1988). In addition to the disclaimer, the Statement provides that the president and vice-president have sole authority to bind

---

**3.** Since defendants have already answered the complaint and pled as affirmative defenses the challenge that they raise here, Fed.R.Civ.P. 12(h)(2) allows defendants to raise in a motion for judgment on the pleadings what they could have raised in a timely motion to dismiss. Defendants' failure to label the motion properly does not preclude relief prior to trial on the merits. Thus, we view the motion as a motion for judgment on the pleadings. *Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1115 (7th Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

Magnecraft to a promise to terminate only for cause. It is not unreasonable to view the Manual as an exercise of that authority, thus requiring Magnecraft to justify its termination decisions. Second, to the extent that the provisions are irreconcilable on their face, the clarification of ambiguities in contractual provisions is a matter best left to the trier of fact. *LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). For both these reasons, defendants' motion for summary judgment as to this portion of Count III is denied.

### III. The Affirmative Defenses

#### A. IHRA Preemption

In their first affirmative defense, defendants raise the contention that the IHRA preempts Seehawer's breach of the non-discrimination provision of the Manual. We have already granted judgment on the pleadings on this defense. Accordingly, Seehawer's motion to strike the first affirmative defense has no merit and is denied.

#### B. Exhaustion of Administrative Remedies

Defendants' second affirmative defense is that Seehawer has failed to exhaust the remedies set forth in the IHRA. This defense applies only to Seehawer's breach of the non-discrimination provisions claim. Since defendants have prevailed on that claim, this defense is stricken as moot.

#### C. ERISA Preemption

■ The relief that Seehawer seeks in Count III includes back pay and wages, lost employee benefits, liquidated damages, an injunction against retaliation and fees and costs. Defendants contend that the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempts any request for benefits, such as those provided by Magnecraft to its employees, covered under an employee benefit plan within the meaning of the statute. Defendants seek to expand ERISA preemption in a way not contemplated by either the drafters of the statute or any court that has interpreted it. Section 1144 provides in pertinent part:

> [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. 29 U.S.C. § 1144(a).

Seehawer's breach of contract claim is not "related to" any alleged ERISA plan. It is not directed at the plan, at any decision of plan fiduciaries or administrators, or at the regulation of plans. The plan may become involved only tangentially in the event Seehawer prevails. That ERISA preempts any action directly challenging the denial or sufficiency of plan benefits does not mean that an employee in an unrelated action cannot recover damages calculable only by reference to a plan. *Accord, Golen v. Chamberlain Mfg. Corp.*, 139 Ill.App.3d 53, 93 Ill.Dec. 677, 487 N.E.2d 121, 125 (1st Dist.1985). Accordingly, the fourth affirmative defense is stricken.

#### D. Rule 11

■ Defendants charge in their fifth affirmative defense "the Complaint is without merit; that plaintiff and her attorney failed to conduct a reasonable investigation as to the facts; that Count III of the Complaint is not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that plaintiff has prosecuted this lawsuit after she knew, or with the exercise of reasonable diligence, should have known that the Complaint was without merit." The language tracks portions of Fed.R.Civ. P. 11.[4] The parties have not presented and research has not revealed any cases accepting or rejecting an affirmative defense founded solely on Rule 11.

---

4. Rule 11 provides in part:
   The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as

We hold that Rule 11 cannot by itself constitute an affirmative defense. An affirmative defense is generally "[a]ny matter that does not tend to controvert the opposing party's prima facie case." 2A Moore's Federal Practice ¶ 8.27[3] at 8–182 (1987). A request for sanctions under Rule 11 is more along the lines of a denial of the claim, challenging the factual or legal basis of the claim asserted, rather than an additional basis for denying relief.[5] Defendants denied Seehawer's allegations in their answer. "A so-called affirmative defense that is surplusage, in that it merely raises matters already at issue under a denial, may be stricken." *Id.* at 8–183. Further, affirmative defenses are ordinarily waived unless pled in the answer to the complaint. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir.1987). Placing a burden upon defendants to affirmatively plead Rule 11 sanctions in their answer could effectively deny relief to those defendants who reasonably discover the frivolity of the complaint long after the initial pleadings phase. We decline to limit Rule 11's application in this way.[6]

### IV. Conclusion

For all these reasons, we grant judgment on the pleadings in favor of the defendants on Seehawer's claim in Count III that defendants breached the nondiscrimination provisions of the Manual. We deny defendants' motion for summary judgment on the remaining breach of contract claim in Count III. We deny the motion to strike the first affirmative defense and grant the motion to strike the second, fourth and fifth affirmative defenses. It is so ordered.

to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**5.** Indeed, "An award of fees under Rule 11 is more like a sanction for contempt of court than like a disposition on the merits or even an award of costs." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079 (7th Cir. 1987), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

**6.** Relief under Rule 11 cannot exist independent of another claim. Accordingly, we deny defendants' request that we alternatively treat their fifth affirmative defense as a counterclaim.