Lynn COMPTON, Plaintiff,

v.

CHINN ENTERPRISES, INC., d/b/a Bob Chinn's Crabhouse and Bob Chinn, individually, Defendants.

No. 95 C 5461.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 14, 1996.

Susan Renee Bauer, Dennis Ray Favaro, Thill, Kolodz & Favaro, Palatine, IL, for plaintiff.

F. Willis Caruso, Janet L. Jannusch, Norma W. Zeitler, Keck, Mahin & Cate, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Lynn Compton ("Compton") sued Chinn Enterprises d/b/a Bob Chinn's Crabhouse ("the Crabhouse") and Bob Chinn ("Chinn") in a four count First Amended Complaint, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq.*, assault and battery, and intentional infliction of emotional distress, respectively. The case is currently before the Court on Defendants' separate Motions to Dismiss.

## ALLEGED FACTUAL BACKGROUND

Compton has been employed by the Crabhouse as a wait person since December of 1991 and has allegedly endured unwelcome sexual remarks and touching by Chinn during her employment, which she categorizes as "sexual harassment." Additionally, "[o]n numerous occasions, Chinn grabbed plaintiff's arm or hand and pulled her towards something he wanted her to see" and "has threatened plaintiff and other employees with physical harm." (Compl. ¶¶ 44–45). Although Compton has complained of this conduct on numerous occasions, no remedial action has been taken, but rather she was met with advice that the way to get along with Chinn was to make a sexual comment back to him or that it is "Bob's Restaurant and he can do whatever he wants." (Compl. ¶¶ 20–23). Moreover, after Compton's EEOC sexual harassment charges were sent to Defendants' counsel, Compton was denied a trainer's bonus and told by a supervisor upon inquiry that "she could not believe plaintiff was asking because she is so unhappy with the Crabhouse." (Compl. ¶¶ 29–30). Additionally, Compton was made to cover management shifts for vacation days on her time off, her tips have been affected because her tables and stations have been continually unfilled, she has been subjected to continuous surveillance and scrutiny as to her job performance, and her complaints of retaliation have not been acted upon by other managers. (Compl. ¶¶ 31–34). Finally, Compton has suffered sleeplessness, nausea, anxiety, depression, humiliation, other emotional and mental injuries, loss of income, and has resumed her smoking habit.

## ANALYSIS

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Adams v. Cavanagh Communities Corp.*, 847 F.Supp. 1390, 1396 (N.D.Ill. 1994). In order to survive a motion to dismiss, a complaint must allege sufficient facts to outline a cause of action. *Davis v. Frapolly*, 747 F.Supp. 451 (N.D.Ill.1989). The complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985).

The Court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). However, the Court need not accept conclusory legal allegations as true. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994). A strict standard applies when a court evaluates the legal sufficiency of a plaintiff's factual allegations. A court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993).

## I. The Motions to Dismiss Counts III & IV

Both Chinn and the Crabhouse move the Court to dismiss the Illinois tort claims of assault and battery and intentional infliction of emotional distress pursuant to the exclusive remedy provision of the Illinois Human Rights Act (the "Act"). 775 ILCS 5/1–101 *et seq.* The Act erects an administrative regime for the redress of civil rights violations. Pursuant to Section 8–111(C), the Act's procedure is the exclusive remedy for such violations, such that a victim may not bring a direct civil action. Rather, the state courts have jurisdiction only over appeals from "any final order entered under th[e] Act." 775 ILCS 5/8–111(A)(1) (July 18, 1996). Specifically, the statute provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775

ILCS 5/8–111(C). This Court may not exercise supplemental jurisdiction over the tort claims if an Illinois court would not have jurisdiction.

The Illinois Supreme Court has explained that claims are barred if "construed as seeking redress for a 'civil rights violation' within the meaning of this statute." *Geise v. Phoenix Co.*, 159 Ill.2d 507, 203 Ill.Dec. 454, 457, 639 N.E.2d 1273, 1276 (1994). The Illinois appellate court's have interpreted the statute as allowing a direct tort action where it "does not depend on the policies or provisions of the Act for its viability." *Ritzheimer v. Insurance Counselors, Inc.*, 173 Ill.App.3d 953, 123 Ill.Dec. 506, 513, 527 N.E.2d 1281, 1288 (5th Dist.1988). *See also Sutton v. Overcash,* 251 Ill.App.3d 737, 191 Ill.Dec. 230, 623 N.E.2d 820 (3d Dist.1993) & *Pavilon v. Kaferly,* 204 Ill.App.3d 235, 149 Ill.Dec. 549, 561 N.E.2d 1245 (1st Dist.1990). Applying that test, the *Ritzheimer* court held that "intentional infliction of emotional distress is a common law tort theory, not a 'civil rights violation' as defined by the Act." *Id.*

The Illinois Supreme Court subsequently addressed Section 8–111(C) and found that it barred a direct action against an employer for "negligent hiring of employee" and "negligent retention of employee," reasoning that:

> the concept of sexual harassment is inextricably linked to the [tort] claims made by [the plaintiff].... Absent the allegations of sexual harassment, [the plaintiff] would have no independent basis for imposing liability on her former employer under the facts presented here. [The tort counts] *depend on the [Act's] prohibitions against sexual harassment for their viability.*

*Geise,* 203 Ill.Dec. at 458, 639 N.E.2d at 1277 (emphasis added). The highlighted language of *Geise* is more than analogous to *Ritzheimer's,* it is identical. Both cases define the inquiry as whether the tort claim depends upon the Act for its viability. Nevertheless, in a recent flurry of opinions, several judges of the Northern District of Illinois have dismissed claims for intentional infliction of emotional distress pursuant to *Geise,* thus effectively finding *Ritzheimer* overruled by *Geise.*[1] However, only two of these opinions actually recognizes *Ritzheimer,* including *Schwitzenberg v. Lifeline, Ltd.,* No. 94 C 5123, 1994 WL 684984 (N.D.Ill. Dec. 6, 1994), the first opinion to construe *Geise,* while the remaining opinions merely follow *Schwitzenberg.* Other judges have held that *Geise* does not require dismissal of claims for intentional infliction of emotional distress. *Tolson v. HHL Fin. Serv., Inc.,* No. 94 C 5136, 1995 WL 461883 (N.D.Ill. Aug. 3, 1995) (Holderman, J.) & *Bustos v. Illinois Inst. of Cosmetology, Inc.,* No. 93 C 5980, 1994 WL 710830 (N.D.Ill. Dec. 15, 1994) (Hart, J.). Although neither opinion relies upon *Ritzheimer,* both employ *Ritzheimer's* standard: whether the claim depends upon the Act for its viability. *Tolson,* at *4; *Bustos,* at *4. Finally, one judge declined to exercise supplemental jurisdiction over such a tort claim after dismissing all federal claims, finding that the exercise of jurisdiction would be improper because "Illinois law is *not* clear in this area," at least as to an employee-defendant. *Rushing v. United Airlines,* 919 F.Supp. 1101, 1112 (N.D.Ill.1996) (Shadur, J.) (emphasis in original).

Although the Court notes that *Schwitzenberg* and its progeny outweigh opinions that

---

1. *Grassmuck v. Chinn Enter.,* 1996 WL 400046 (N.D.Ill. July 15, 1996) (Holderman, J.); *Johnson v. C & L, Inc.,* 1996 WL 308282 (N.D.Ill. June 6, 1996) (Norgle, J.); *Stewart v. Thomas,* 1996 WL 308284 (N.D.Ill. June 6, 1996) (Conlon, J.); *Erickson v. Elco Indus.,* 1996 WL 268383 (N.D.Ill. May 20, 1996) (Reinhard, J.); *Damato v. Jack Phelan Chevrolet Geo, Inc.,* 927 F.Supp. 283 (N.D.Ill.1996) (Norgle, J.); *Ibrahim v. Holidays Inn, Inc.,* No. 1996 WL 199743 (N.D.Ill. Apr. 23, 1996) (Conlon, J.); *Hannigan–Haas v. Bankers Life & Casualty Co.,* 1996 WL 139402 (N.D.Ill. Mar. 26, 1996) (Conlon, J.); *Janopoulos v. Harvey L. Walner & Assoc.,* 1996 WL 131754 (N.D.Ill. Mar. 15, 1996) (Coar, J.); *Stahnke v.* *LMLM, Inc.,* 1996 WL 48610 (N.D.Ill. Feb. 5, 1996) (Lindberg, J.); *Menchaca v. Rose Records, Inc.,* 1995 WL 151847 (N.D.Ill. Apr. 3, 1995) (Plunkett, J.); *Slaughter v. Waubonsee Community College,* 1995 WL 106420 (N.D.Ill. Mar. 9, 1995) (Gettleman, J.); *Jansen v. Packaging Corp.,* 895 F.Supp. 1053 (N.D.Ill.1995) (Shadur, J.); *Al–Dabbagh v. Greenpeace, Inc.,* 873 F.Supp. 1105 (N.D.Ill.1994) (Shadur, J.); *Schwitzenberg v. Lifeline, Ltd.,* 1994 WL 684984 (N.D.Ill. Dec. 6, 1994) (Aspen, J.); *cf. Cosek v. Chinn Enter.,* 1996 WL 377056 (N.D.Ill. July 1, 1996) (Grady, J.) & *Lynam v. Foot First Podiatry Centers, P.C.,* 886 F.Supp. 1443 (N.D.Ill.1995) (Castillo, J.).

follow *Ritzheimer* in terms of quantity, the Court finds that the latter opinions warrant greater weight due to the persuasive force of their reasoning. As explained above, *Ritzheimer*, *Tolson*, and *Bustos* applied the same standard as *Geise*—whether the tort depends upon the Act for its viability—in finding Section 8–111(C) inapposite to the tort of intentional infliction of emotional distress. The two opinions to reach a different result under *Geise* while acknowledging *Ritzheimer* necessarily distinguished *Ritzheimer*. A close analysis of *Geise* and *Ritzheimer* is in order.

Geise, the plaintiff, sued her former employer, Phoenix, and another employee, Walthall, who had allegedly sexually harassed her through the following unsolicited and unconsensual sexual advances: he tried to kiss and touch her, dropped things down the front of her blouse, and orchestrated what he purported to be business lunch meetings in order to make sexual advances toward Geise. *Geise*, 203 Ill.Dec. at 455, 639 N.E.2d at 1274. Geise also alleged that if Phoenix had made reasonable inquiries before hiring Walthall, it would have discovered that he had a "history and predisposition of sexual harassment against women employees and co-workers" and was dismissed from previous employment for such behavior. Finally, despite Geise's complaints to her supervisors regarding Walthall, Phoenix did nothing for some time, until it conducted an investigation based upon new charges by Geise. Although the charges were confirmed, Phoenix allegedly failed to take any remedial action. Subsequently, Walthall fired Geise. *Id.*

The claims against Walthall were not at issue, but Phoenix moved to dismiss the claims against it for "negligent hiring of employee" and "negligent retention of employee." Geise alleged that Phoenix committed "negligent retention of employee" because it gave him authority and control over women, a position for which he was unfit and from which arose Phoenix's "duty to its employees to protect them from harm to their persons, property, and career advancement," which it breached by not taking remedial action despite knowledge of Walthall's conduct. *Id.* at 455–56, 639 N.E.2d at 1274–75. Geise further alleged that Phoenix committed "negligent hiring of employee" based upon the above allegations and the following:

(1) at the time Phoenix employed Walthall, he had "a history of sexual discrimination and harassment[,] having been dismissed from previous employment for reasons of sexual discrimination and harassment," (2) that Walthall's improper behavior toward women employees at his previous job could have been discovered by Phoenix through reasonable inquiry, and (3) that Phoenix "owed a duty to [Geise] to investigate and breached its duty of care to its employees by hiring [Walthall] when [it] knew or should have known of his propensity for sexual harassment and discrimination." Count IV further charged that Phoenix was reckless and grossly negligent when it hired Walthall, notwithstanding his prior misconduct, for a position that required him to work with and have authority over women.

*Id.* at 456, 639 N.E.2d at 1275 (first alteration in original). Phoenix argued that Geise failed to state a cause of action. The appellate court concluded that Geise had "properly alleged a duty that is recognizable in tort law." *Geise v. Phoenix Co.*, 246 Ill.App.3d 441, 186 Ill.Dec. 122, 130, 615 N.E.2d 1179, 1187 (2d Dist.1993).

Phoenix raised Section 8–111(C) for the first time at the supreme court level. Being jurisdictional, the court addressed the argument and began by looking to the Act's definition of sexual harassment, which includes "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when ... such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." 775 ILCS 5/2–101(E)(3). Further,

It is a civil rights violation: For any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if

the employer becomes aware of the conduct and fails to take corrective measures. 775 ILCS 5/2–102(D). In other words, the Act makes an employer strictly liable for a supervisor's sexual harassment. *Geise*, 203 Ill.Dec. at 458, 639 N.E.2d at 1277 (citing *Board of Directors v. Human Rights Comm'n*, 162 Ill.App.3d 216, 113 Ill.Dec. 216, 514 N.E.2d 1227 (5th Dist.1987)).

In construing the tort claims as charging Phoenix with a civil rights violation within the meaning of the Act, the court rejected Geise's argument that "her action against Phoenix is unrelated to considerations of sexual harassment and is predicated on independent policy considerations." *Id.* Rather, as explained above, the court stated:

> The notion that Phoenix's liability is not based on the prohibitions against sexual harassment is belied by the allegations of Geise's complaint. As our previous discussion of the pleadings reflects, the concept of sexual harassment is inextricably linked to the [tort] claims made by Geise in counts III and IV. Absent the allegations of sexual harassment, Geise would have no independent basis for imposing liability on her former employer under the facts presented here. Counts III and IV depend on the prohibitions against sexual harassment for their viability.

*Id.* at 458, 639 N.E.2d at 1277. The court supported this statement with: (1) Geise's reliance on the definitions of sexual harassment in Title VII and the Act in arguing to the appellate court that Phoenix had committed an actionable wrong and (2) the appellate court's conclusion that "Geise has adequately pleaded a cause of action based, *inter alia,* on 'the serious harm that sexual harassment has been legislatively deemed to constitute.'" *Id.* Finally, the court noted the inability of Geise's negligence allegations to "alter the fundamental nature of her cause of action," as an employer is strictly liable for a supervisor's sexual harassment under the Act. *Id.* at 458–59, 639 N.E.2d at 1277–78.

In contrast, the *Ritzheimer* court easily extricated the claim of intentional infliction of emotional distress from the concept of sexual harassment. The court found that the claim does not depend on the policies or provisions of the Act for its viability. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts which, if true, would establish that conduct by defendant was extreme and outrageous, that the emotional distress suffered by the plaintiff was severe, and that the defendant acted either intentionally to cause distress or with knowledge of the fact that severe emotional distress would be certain or substantially certain to result. These elements are substantially different from those necessary to establish a "civil rights violation" under the Act, and they may be present even where a "civil rights violation" based on sex discrimination cannot be shown.

123 Ill.Dec. at 513, 527 N.E.2d at 1288 (citation omitted).

In order to deem *Ritzheimer* repudiated by *Geise* in the face of their identical standard of whether the claim depends upon the Act for its viability, one must assume that the *Geise* court would have found that intentional infliction of emotional distress depends upon the policies or provisions of the Act for its viability, just as it rejected Geise's argument that her action was predicated on independent policy considerations. 203 Ill.Dec. at 458, 639 N.E.2d at 1277. However, the *Geise* court was faced with a tort whose existence derived from the Act. As the Illinois Supreme Court explained, in arguing and in finding that the claim was actionable, the plaintiff and the appellate court relied upon the Act's prohibition of sexual harassment. In other words, absent the Act's prohibition of sexual harassment, the employer's hiring and retention of an employee whose conduct of a sexual nature creates a hostile working environment would not be an actionable tort. In contrast, absent the Act's prohibition of sexual harassment, an employee's intentional infliction of emotional distress through conduct of a sexual nature would be an actionable tort.[2] As the *Ritzheimer* court

---

2. Moreover, an employee's intentional tort is attributable to the employer "where the co-employee acts as the alter ego of the employer." *Tol-*

*son,* 1995 WL 461883, at *3. In the present case, Compton alleges that "Chinn was the alter ego of the Crabhouse as that term has been

aptly remarked, "The most one can say about this, however, is that the [claim] involved sex and employment." 123 Ill.Dec. at 514, 527 N.E.2d at 1289. As the *Ritzheimer* court further observed, the independent source of the tort manifests itself in the elements needed to establish the tort being different from those needed to establish a civil rights violation. This analysis applies equally well to the tort of assault and battery. *Tolson*, at *4; *Bustos*, at *4.

The analysis is therefore analogous to the preemption standards of the Labor Management Relations Act and the Railway Labor Act, as articulated by the United States Supreme Court: "a state-law cause of action is not pre-empted ... if it involves rights and obligations that exist independent of the collective bargaining agreement," with Illinois Human Rights Act substituted for collective bargaining agreement. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, ——, 114 S.Ct. 2239, 2247, 129 L.Ed.2d 203 (1994).

Therefore, the Motions to Dismiss Counts III and IV are denied.

## II. Chinn's Motion to Dismiss Counts I & II

 Defendant Bob Chinn moves to dismiss the Title VII claims contained in Counts I and II as to him, arguing that he cannot be liable under 42 U.S.C. § 2000e as an individual. The Seventh Circuit held in *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995) that Title VII does not impose individual liability, which it had previously defined "to mean the liability of individuals who do not otherwise meet the statutory definition of employer." *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280 n. 2 (7th Cir.1995). The court explained that it "address[ed] only personal capacity liability, which is sometimes called 'supervisor liability' because that is the most common situation in which the question arises." *Id.* However, Compton alleges that Chinn is the alter ego of the Crabhouse and, thus, argues that Title VII applies to Chinn. Chinn in turn relies upon the Seventh Circuit's dictum in *AIC Security* when it held

defined under Illinois law in reference to liability of employers and supervisors for tortious con-

that the Americans with Disabilities Act does not impose individual liability. The Seventh Circuit noted the following:

The EEOC also argues that even if individuals cannot be liable under the ADA, [the defendant] can somehow be liable as [the employer]'s "alter ego." However, this argument is forfeited because it was not raised before the district court.... In any case, we see no good reason why it should made any difference for our analysis whether [the defendant] was [the employer]'s alter ego. She might be effectively liable if the corporate veil were pierced, and as sole shareholder she will necessarily absorb the pinch from AIC's liability, but as to her individual capacity liability it does not matter even if she was [the employer]'s alter ego.

*Id.* at 1282 n. 11 (citation omitted).

Finally, Compton argues that Chinn is collaterally estopped from relitigating the alter-ego issue, that issue having been decided on the merits in another Title VII case against Chinn, *Curcio v. Chinn Enterprises*, 887 F.Supp. 190 (N.D.Ill.1995). Indeed, two other judges have held that the *Curcio* ruling collaterally estops Chinn from arguing the alter-ego issue against other plaintiffs. *Grassmuck v. Chinn Enter.*, No. 95 C 3729, 1996 WL 400046, at *2–3 (N.D.Ill. July 15, 1996); *Cosek v. Chinn Enter.*, No. 94 C 6660, 1996 WL 377056, at *1–2 (N.D.Ill. July 1, 1996) & 1995 WL 699723, at *1 (N.D.Ill. Nov. 24, 1995). This court follows these opinions and holds that Chinn is collaterally estopped from relitigating whether Title VII liability attaches to an employer's alter ego.

The Court rejects Chinn's three arguments to the contrary. First, the issue was actually decided on the merits. *See Montana v. United States*, 440 U.S. 147, 160–63, 99 S.Ct. 970, 977–79, 59 L.Ed.2d 210 (1979) (although collateral estoppel usually involves prior factual determinations, it can preclude relitigation of pure legal questions raised in cases "closely aligned in time and subject matter") & *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392–94 (7th Cir.1986)

duct in the workplace." (Compl. ¶ 6).

(interlocutory rulings of other courts entitled to preclusive effect) (*both cited in Cosek,* 1995 WL 699723, at \*1). Second, Compton is not analogous to the common carrier or product liability wait-and-see plaintiff, as her claims rest upon independent facts. *Cf. Ross–Berger Co. v. Equitable Life Assur. Soc'y,* 872 F.2d 1331, 1337–38 & n. 2 (7th Cir.1989); *Starker v. United States,* 602 F.2d 1341, 1348–50 (9th Cir.1979). Third, the dictum in *AIC Security* does not render application of collateral estoppel unfair, as Chinn litigated the applicability of *AIC Security* in front of the *Curcio* court and lost.

Likewise, the Court rejects Chinn's motion to dismiss Count IV—retaliation—for failure to name Chinn in the EEOC charge. First, having been named in the sexual harassment charge, Chinn was " 'provided with adequate notice of the charge, under circumstances where [he] has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance.' " *See Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126–27 (7th Cir.1989) (citation omitted). Second, Chinn's alter ego status bolsters this finding.

## CONCLUSION

For the reasons given above, the Court DENIES Defendants' Motions to Dismiss.