(No. 34820.—

MID-SOUTH CHEMICAL CORPORATION, Appellee, *vs.* CHARLES F. CARPENTIER, Secretary of State, *et al.,* Appellants.

*Opinion filed September 18, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, (RICHARD W. HUSTED, of counsel,) for appellants.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

This appeal and cross appeal, involving interests of the State, pose the question of whether certain vehicles owned by plaintiff, the Mid-South Chemical Corporation, are exempt from the registration and licensing provisions of section 9 of the Motor Vehicle Act. (Ill. Rev. Stat. 1955, chap. 95½, par. 9.) The section in question creates a so-called agricultural exemption in the following terms: "Pro-

vided, that none of the provisions of this Act requiring or prescribing registration shall be construed to include farm tractors, traction engines, threshing machines, clover hullers, ensilage cutters, corn shredders, corn shellers, corn grinders, hay presses, portable saw mills, binders, combines, farm machinery and implements, farm wagons, or like vehicles, trailers or semi-trailers used in connection therewith, which are used primarily in the agricultural pursuits of the owner thereof or in connection with the agricultural pursuits of others, or vehicles used exclusively for moving water well drilling outfits, but nothing in this proviso shall exclude from registration truck tractors, trucks, trailers, or semi-trailers engaged in transporting agricultural products."

Operating from 61 distributing plants located throughout the State, plaintiff is engaged in the business of selling a chemical fertilizer (anhydrous ammonia) to farmers, all sales being F.O.B. at the plant site. At each of the plants plaintiff keeps a number of vehicles described in the decree below as being farm wagons or trailers "of the four-wheel rubber-tired variety, from which the wagon beds were removed or which were purchased without wagon beds and upon which pressure tanks designed to carry compressed gas (primarily of five hundred or one thousand gallon water capacity) have been mounted." These tank vehicles are used exclusively for the purpose of hauling plaintiff's product from the distributing plant to the farm, there being neither allegation nor proof that they are employed in applying the fertilizer to the soil. At each of the plants specific wagons are allocated for specific use as follows: First, plaintiff's distributors use certain of the wagons to make deliveries to the farms of their farmer customers; second, certain of the wagons are used by farmer customers who haul fertilizer to the farm of a neighbor for the latter's use; and, third, farmer customers use certain of the wagons to haul fertilizer to their own farms for their own use. Plaintiff makes no charge for the use of its wagons and charges

the same unit price for its fertilizer whether the farmer uses his own or a company wagon for hauling. Whether the same is true when plaintiff's distributors make delivery to the farm is unanswered in the record.

When defendants, the Secretary of State and Director of the Department of Public Safety, took the position that such truck-wagon trailers were subject to the registration, license fee and flat weight tax provisions of the Motor Vehicle Act, (see: Ill. Rev. Stat. 1955, chap. 95½, par. 9,) and sought to enforce such provisions, plaintiff instituted the present action for permanent injunctive relief in the circuit court of Sangamon County, alleging exemption on the ground that all the wagons or trailers involved are, within the meaning of the exemption proviso, "farm wagons, or like vehicles, * * * which are used primarily * * * in connection with the agricultural pursuits of others." Upon motion for summary judgment by defendant the chancellor found that the wagons used for the first two purposes, above described, did not come within the agricultural exemption, but held that those used by the farmer-customer to haul fertilizer for himself were exempt and granted the injunctive relief prayed. Defendants have appealed and plaintiff has cross-appealed from the aspects of the decree unfavorable to each.

The question of whether any or all of the plaintiff's tank vehicles fall within the agricultural exemption of the Motor Vehicle Act is one of first impression, the answer to which must be found in the statute itself. In such a case, it is the function of the courts to ascertain and give effect to the intent of the legislature, arriving at such intention not only from the language employed in the legislation, but also from the reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained. (*Lincoln National Life Ins. Co.* v. *McCarthy,* 10 Ill.2d. 489; *Kloss* v. *Suburban Cook County Tuberculosis Sanitarium Dist.,* 404 Ill. 87.) Furthermore, under familiar

principles, a statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from the provisions of the statute that intent will prevail without resort to other aids for its construction. (*Illinois Bell Telephone Co.* v. *Fox,* 402 Ill. 617; *Deutsch* v. *Department of Insurance,* 397 Ill. 218.) In the present case it may be concluded, first, that the legislature has not in express terms granted exemption to tank trailers used for the hauling of gaseous fertilizer and, second, that plaintiff, the owner of the vehicles under scrutiny, is not engaged in an agricultural pursuit. The question for determination then is whether or not it was the legislative intent to include vehicles of such nature within the exemption extended to "farm wagons, or like vehicles, * * * which are used primarily * * * in connection with the agricultural pursuits of others." Plaintiff sees in this language a clear application to all its tank trailers whether used by a distributor to make delivery, by a farmer who hauls fertilizer for a neighbor, or by a farmer hauling plaintiff's product for his own use. Defendants, however, insist with equal force that neither the vehicles nor their use qualify them for exemption.

By the body of section 9 of the Motor Vehicle Act, the legislature has provided that all owners of vehicles "which are designed or equipped or used for carrying freight, goods, wares or merchandise" shall register such vehicles each year and pay a license fee "for the use of the public highways of this State." Plaintiff's vehicles clearly fall within this description and, under the provisions of the exemption proviso, two requirements must be met to entitle such vehicles to exemption, *viz.,* they must be farm wagons, or like vehicles, and they must be used "primarily" in connection with the agricultural pursuits of others. Even assuming that the vehicles involved meet the first requirement, we are of the opinion that they fail to satisfy the second.

Provisos in a statute, being designed to qualify or limit what is affirmed in the body of an act, should be strictly construed. (*Doubler* v. *Doubler,* 412 Ill. 597; *Public Utilities Commission* v. *Early,* 285 Ill. 469.) Likewise, it is a fundamental rule of statutory construction that each word, clause, and sentence in a statute must, if possible, be given some meaning. (*People ex rel. Roan* v. *Wilson,* 405 Ill. 122.) Under these rules it is of significance in the case at hand that exemption has been granted to the vehicles enumerated in the proviso only where they are used "primarily" in connection with agricultural pursuits. Webster's New International Dictionary, 2d ed., defines the adjective "primary" as follows: "First in order of time or development or in intention." The adverb "primarily" is defined as "pre-eminently; fundamentally." To be exempt under the statutory language, therefore, a farm wagon or like vehicle, the owner of which is not engaged in an agricultural pursuit, must be used fundamentally and pre-eminently in connection with the agricultural pursuits of others. Here the plaintiff is engaged in the commercial enterprise of selling fertilizer, and it may reasonably be inferred that its intention and purpose in adapting and maintaining tank trailers as it does is to further its sales of fertilizer. Bearing in mind that the vehicles are used exclusively on the public highways for the purpose of affecting delivery of the plaintiff's merchandise and that such vehicles are in no manner used in subsequent agricultural processes, the inescapable conclusion to be reached is that their primary use relates to plaintiff's commercial enterprise rather than to the agricultural pursuits of others. Unlike the chancellor below, we are of the opinion this is true even of those vehicles which have been set apart by the plaintiff for its farmer customers to haul fertilizer for their own use. No matter who employs the vehicles, plaintiff's distributors, neighbors, or the purchasing farmers themselves, it is manifest that any use in con-

nection with the pursuit of agriculture is secondary to their primary use of facilitating the sale and delivery of plaintiff's product. A contrary construction, carried to its logical conclusion, would extend exemption to every vehicle of the second class used to make delivery of supplies, tools, equipment and the like, to those engaged in agricultural pursuits. Such a result would not only be absurd in face of the language used in the body of section 9, but would also ignore the clearly expressed legislative intent to grant exemption only to farm wagons and vehicles used primarily for, or in connection with, agricultural pursuits.

For the reasons expressed we conclude that none of the uses to which plaintiff's vehicles are put serves to bring them within the exemption proviso. Accordingly, the decree of the circuit court of Sangamon County is affirmed insofar as it denied exemption to certain of plaintiff's vehicles, but is reversed insofar as it granted exemption and injunctive relief with respect to the remaining vehicles.

*Affirmed in part and reversed in part.*