THE FAIR EMPLOYMENT PRACTICES COMMISSION, Petitioner-Appellant,

*v.* RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER *et al.,*

Respondents-Appellees.

First District (3rd Division)   No. 62302

Opinion filed August 19, 1976.—Rehearing denied September 2, 1976.

J. Stuart Garbutt, of Chicago, for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago, for appellees.

Lois Kraft and Marianne K. O'Brien, both of American Civil Liberties Union, for *amicus curiae*.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Petitioner, the Fair Employment Practices Commission of the State of Illinois (FEPC), appeals from an order of the trial court which dismissed its petition to enforce a subpoena against respondents, Rush-Presbyterian-St. Luke's Medical Center (Rush) and Charles A. Freeman, Associate Administrator of Human Resources for Rush (Freeman). The petition was dismissed upon motion of respondents on the ground that Rush was exempt from the provisions of the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*).

The FEPC contends on appeal that the trial court erred in finding that Rush was sufficiently "affiliated with" a church or religious organization as to exempt it from the statutory definition of an "employer" contained in section 2(d) of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 852(d)). In addition, the Illinois Division of the American Civil Liberties Union has filed an *amicus curiae* brief with this court which contends that section 2(d) is unconstitutional on its face as violative of the

establishment of religion, equal protection, and due process clauses of the United States Constitution as well as article I, section 17, of the 1970 Illinois Constitution.

The pertinent facts follow.

On September 6, 1973, Dr. Julia Apter filed a sexual discrimination charge with the FEPC against her employer, Rush. The FEPC instituted an investigation which included the service of a subpoena on Freeman for the production of certain documents and materials. On March 22, 1974, Rush filed two petitions with the FEPC which sought respectively to dismiss the charge and to revoke the subpoena, both predicated on the basis that Rush was not an "employer" as defined by section 2(d) of the Act. The petitions were denied by the FEPC and Rush was directed to comply with the subpoena. Subsequently, the FEPC was advised by Rush's attorney that the subpoena would not be honored.

On September 5, 1974, the FEPC petitioned the trial court to enforce the subpoena. In response Rush filed a motion to dismiss which again alleged that it was not within the definition of an employer contained in section 2(d) of the Act. Documentary exhibits, answers to discovery interrogatories, and an affidavit of one of Rush's employees were introduced into evidence at a hearing on the motion to dismiss. The evidence indicates that Rush as it is presently constituted was created by a merger in 1969 of Rush Medical College and Presbyterian-St. Luke's Health Center, the new corporation taking the name of Rush-Presbyterian-St. Luke's Medical Center. Its articles of incorporation are silent as to its connection with any church or religious organization. The so-called "pastoral care" program at Rush provides staff chaplains for hospital patients, and the appropriation for the program amounts to two-tenths of one per cent of Rush's entire operating budget. For the years 1970-1975 the Presbytery of Chicago and the Protestant Episcopal Church contributed only $7,959 to Rush's total operating budgets of $75,000,000. In letters from representatives of the Presbytery of Chicago and the Episcopal Diocese of Chicago, it was stated that the Presbytery had only an informal relationship with Rush and did not exercise any control over it, and that the Episcopal Diocese had only tacitly agreed to an "affiliation" with Rush and also exercised no control over it. Although its previous bylaws had provided for 50 trustees, six of whom were to be clerical trustees, the current bylaws of Rush, adopted on October 28, 1970, make no provision for the appointment of clerical trustees. On March 21, 1975, the trial court granted Rush's motion to dismiss. In its written order the trial court found:

> (1) that Rush is exempt from the Act because it is affiliated with the Presbytery of Chicago of the United Presbyterian Church and the Protestant Episcopal Church, Diocese of Chicago;

(2) that Rush did not waive its exemption from coverage of the Act when it answered the substance of the charge filed by Dr. Apter; and

(3) that section 2(d) of the Act as construed by the court does not violate amendments I, V, or XIV of the United States Constitution or article I, sections 2, 3 or 17, of the Illinois Constitution.

Throughout the proceedings before the trial court the FEPC was represented by the Illinois Attorney General. However, on April 21, 1975, the FEPC by its own house counsel filed a notice of appeal from the dismissal order.

■■ Of initial concern is the argument of Rush that this appeal should be dismissed as filed in violation of article V, section 15, of the 1970 Illinois Constitution because it is prosecuted by counsel other than the Illinois Attorney General. It is argued that since all appellate proceedings have been conducted by the counsel of the FEPC rather than the Attorney General, the appeal is unauthorized and should be dismissed. It has been held that the Illinois Attorney General is the sole advisor and counsel of all executive officers, boards, commissions and departments of the State. (*Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130.) The Attorney General is exclusively empowered by our State constitution to conduct the law business of the State in matters in which the State is the real party in interest. (*Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409.) This exclusive constitutional delegation of authority to the Attorney General is not infringed, however, where an organ of the State is represented by other counsel who remains under the control of the Attorney General and serves only at his pleasure. (*People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 120 N.E.2d 35.) In correspondence filed by the FEPC with this court the Attorney General at first refused to institute an appeal in the instant case. Yet subsequent correspondence indicates that the Attorney General was aware of the intention of the FEPC to file a notice of appeal on its own initiative and although he considered an appeal to be unwise the Attorney General wished the FEPC success in prosecuting the appeal. This acquiescence, coupled with the acknowledgment of the counsel of the FEPC in oral argument that the Attorney General retained authority to control the appeal or even demand its dismissal was sufficient to meet the requirements of *People v. Illinois Toll Highway Com.* Under these facts we hold that the authority of the Attorney General is not infringed by the instant appeal having been brought by FEPC through other counsel.

■■ We next consider the *amicus curiae* brief filed by the American Civil Liberties Union. The sole issue raised there is that section 2(d) of the Fair Employment Practices Act is unconstitutional on its face. A variety of constitutional arguments are asserted to support that contention.

However, the merits of that contention need not be addressed for such issue was not raised in the trial court and therefore cannot be raised upon appeal. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353; *Fair Employment Practices Com. v. Tenerovitz* (1975), 25 Ill. App. 3d 471, 323 N.E.2d 353.) In the proceedings the trial court only passed upon the constitutionality of section 2(d) as it was construed in regard to the particular facts of this case. Even that question has not been preserved for appeal because it was not raised in the brief of the FEPC. *Collins v. Westlake Community Hospital* (1974), 57 Ill. 2d 388, 312 N.E.2d 614.

■■ The sole contention raised by the FEPC upon appeal is that the trial court erred in finding that Rush was sufficiently "affiliated with" a church or religious institution to be exempt from the statutory definition of an "employer" contained in section 2(d) of the Fair Employment Practices Act which provides in pertinent part:

> "The term 'employer' does not include any not for profit corporation or association organized for fraternal or religious purposes, nor any school, educational or charitable institution owned and conducted by, or affiliated with, a church or religious institution, nor any exclusively social club, corporation or association that is not organized for profit."

The term "affiliated with" is not defined by the Act. In the absence of statutory definition indicating a different legislative intent, words are to be given their common dictionary or commonly understood meaning. (*People v. Dednam* (1973), 55 Ill. 2d 565, 304 N.E.2d 627; *Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 120 N.E.2d 15, cert. denied 348 U.S. 857.) The primary definition of "affiliated" in Webster's Third New International Dictionary (1971) is "to attach as a member or branch: bring or receive into close connection." Citing a secondary definition from the same source, Rush urges that "affiliated" should be defined as "to connect or associate oneself." We disagree.

The primary purpose of statutory construction is to ascertain the intent of the legislature. (*People v. Dednam; Tan v. Tan* (1972), 3. Ill. App. 3d 671, 279 N.E.2d 486.) In adopting the Fair Employment Practices Act, the legislature intended to give the remedial provisions of that Act the widest constitutional application that could be achieved. The exemptions of section 2(d) of the Act were a recognition by the legislature that the prohibitions against unreasonable interference with the freedoms of religion and association must be observed. The primary definition of the word "affiliated" previously quoted is more in keeping with the legislative purpose underlying the exemptions of section 2(d) than is the broader definition urged by Rush. Indeed, the definition urged by Rush would in our view be broader than required to reconcile the provisions of the Act with the First Amendment rights. We do not, however, attempt to define

the perimeters of the term "affiliated with" as used in the Act, other than to state that it imports more than a simple connection or association.[1]

■■ Having determined that "affiliated with" requires more than the demonstration of a mere connection or association, we conclude that the instant record does not support the finding of the trial court that Rush was affiliated with the Presbytery of Chicago and the Episcopal Diocese of Chicago. Contrary to Rush's argument that its predecessor's historical religious affiliations must be considered, such information is irrelevant to its present status under the Act. It is the status of a defendant at the time of the alleged unfair employment practice that determines whether the defendant is exempt from the provisions of the Act. (*Fair Employment Practices Com. v. Tenerovitz.*) Rush's historical development has no bearing on that determination. However, the following factors were operative at the time of the alleged violation. Its articles of incorporation and current bylaws are silent as to its connection with a religious institution. Moreover, Rush's current bylaws have changed from a prior requirement concerning the placement of clerical members on the board of trustees. Its religious activities and the appropriations for those activities are minimal in comparison to its overall budget. The same is true as to the financial contributions to Rush from those religious institutions with which it claims affiliation. Representatives of the two religious institutions to which Rush claims affiliation have indicated that any connection between their institutions and Rush is merely informal at best, and at the sufferance of each. We believe that in the aggregate, these factors demonstrate that Rush was not affiliated with a church or religious institution within the meaning of section 2(d) of the Act. The relationships of record are simply too tenuous on which to predicate such an exemption.

For the reasons stated, the trial court erred in finding that Rush was exempt from the provisions of the Fair Employment Practices Act. Therefore, the order of the Circuit Court of Cook County dismissing the petition to enforce the subpoena of the FEPC is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DEMPSEY and McNAMARA, JJ., concur.

---

[1] By amendment, effective October 1, 1975, section 2(d) of the Fair Employment Practices Act was modified in its exemption of religious institutions. The amended subsection provides in pertinent part:

"The term 'employer' does not include any religious corporation, association, educational institution or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution or society of its activities."

However, the amendment is not applicable to the instant appeal as the underlying charge was filed before its effective date.