Elton HOUSTON, et al., Plaintiffs,

v.

COOK COUNTY, et al., Defendants.

No. 90 C 3342.

United States District Court,
N.D. Illinois, E.D.

Sept. 24, 1990.

Thomas Peters, Chicago, Ill., for plaintiffs.

Cecil A. Partee, State's Atty., Harold McKee, III, Asst. State's Atty., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This 42 U.S.C. § 1983 ("Section 1983") Complaint by Elton Houston ("Houston") and Robert Brown ("Brown") sets out a factual statement that, taken at face value (as this Court must do), recounts truly outrageous conduct on the part of Assistant State's Attorneys—their nondisclosure and affirmative concealment of exculpatory information that caused Houston and Brown to suffer unjust imprisonment for over four years for a murder that they did not commit.[1] But the problem that Houston

---

1. Both Houston and Brown have indeed been released from prison based upon confessions of the real killers. This case has triggered a strong sense of deja vu on the part of this Court, which while in private practice was involved in a case in which a defendant was spared from being executed by a last-minute stay granted by Judge J. Sam Perry of this District Court based on a prosecutor's deliberate misrepresentation that a pair of *paint*-stained shorts was "a garment heavily stained with blood"—a particularly egregious instance of prosecutorial misconduct in the context of a brutal rape-murder of an eight year old girl. That led to the reversal of the unconstitutional conviction by the United States Supreme Court in *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967). But it developed that the prosecutor had been guilty of even more reprehensible conduct: his deliberate concealment of wholly exculpatory forensic evidence (a pubic hair found in the vagina of the rape-murder victim that scientific analysis proved could not possibly have come from the defendant). That led to the freeing of defendant Lloyd Miller, who but for the intervention of a District Judge (who years later became one of this Court's colleagues) was less than a day away from being put to death even though he was innocent—and even though he was apparently known to be so by the prosecutor. In a

and Brown face here is one that they must overcome at the threshold, before the merits of their claims can even be approached: They have named, as the only defendants here, parties who are not amenable to suit under Section 1983. Their federal claims must therefore be dismissed, and that dismissal has a domino effect on their state claims as well.

■■■ This Court's August 3, 1990 memorandum opinion and order (the "Opinion") directed the parties to focus on the issue of suability, with special emphasis on the Illinois Supreme Court's decision in *Ingemunson v. Hedges*, 133 Ill.2d 364, 140 Ill.Dec. 397, 549 N.E.2d 1269 (1990). Now they have completed their briefing, and counsel for Houston and Brown have failed to overcome the hurdle identified in the Opinion.[2]

*Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989) teaches definitively that the definition of "persons" suable under Section 1983 does *not* extend either to the State itself or to official-capacity lawsuits against State officials (citations and footnote omitted):

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

And of course it is the State that defines its own governmental structure for that purpose, deciding who are and who are not its "officials."[3]

Last year this Court, confronted with that question whether under Illinois law "the State's Attorney is indeed the legal equivalent of the State itself" (*Santiago v. Daley*, 726 F.Supp. 198 (N.D.Ill.1989)) had to make do by parsing out inferences from some Illinois Court of Claims cases (which of course dealt with the problem in a different context) and Illinois Appellate Court cases. Based on that patching together of prior precedent *Santiago* concluded (726 F.Supp. at 200 (emphasis in original)):

> Illinois law does *not* equate the State's Attorney with the State for Section 1983 purposes.

But since then the Illinois Supreme Court itself has had occasion to speak to the issue—also in a different context, to be sure, but in a way that this Court must view as a binding construction of the Illinois Constitution. *Ingemunson* acknowledged the holdings in the 1906 Illinois Supreme Court decision that had later been relied on by the Court of Claims' decisions to which *Santiago* had referred, as well as acknowledging the Illinois Appellate Court decisions to which *Santiago* had also referred. But having done so, *Ingemunson*, 133 Ill.2d at 369–70, 140 Ill.Dec. at 399–400, 549 N.E.2d at 1271–72 specifically *rejected* those earlier authorities in favor of a decision that dooms the official-capacity claim against Cook County State's Attorney Cecil Partee ("Partee") here:

sequel difficult to believe, that downstate prosecutor was later found not to be subject to disciplinary sanctions in proceedings before the Illinois State Bar Association's Board of Governors (who under the then-existing lawyer disciplinary structure were the designated Commissioners of the Illinois Supreme Court for that purpose).

2. In order that this opinion may be self-contained, it will borrow freely from portions of the Opinion.

3. There might conceivably be situations in which States adopted sham devices in that respect to distort the legal consequences—somewhat akin to the early "white primary" voting cases in the South, where the reverse type of argument was repeatedly and unsuccessfully made that defendants were private parties rather than "state actors" for constitutional purposes (see, e.g., *Terry v. Adams*, 345 U.S. 461, 463, 470, 73 S.Ct. 809, 810–11, 813–14, 97 L.Ed. 1152 (1953)). But nothing of that nature is even arguably at issue here.

*Hoyne* [*v. Danisch* (1914), 264 Ill. 467, 106 N.E. 341] established that State's Attorneys are State officers under the language of the constitution, not, as the court had concluded in [*People v.*] *Williams* [232 Ill. 519, 83 N.E. 1047 (1908)], county officers. (*Hoyne*, 264 Ill. at 470–72, 106 N.E. 341.) The debates of the Sixth Illinois Constitutional Convention of 1969–70 indicate that the drafters of our present constitution agreed with the decision in *Hoyne* that State's Attorneys should be classified as State, rather than county, officials. (see 2 Record of Proceedings, Sixth Illinois Constitutional Convention 730–31, 741–42.)[4]

Counsel for Houston and Brown advances a few ingenious suggestions as to why *Ingemunson* should not control here. None is persuasive. What cannot be gainsaid is that *Ingemunson* expressly reviewed the earlier precedent and reached a different conclusion, which this Court must perforce accept as the definitive ruling under Illinois law. And relatedly this Court must of course assume that the Illinois Court of Claims—which had relied on the earlier contrary precedent now found noncontrolling in *Ingemunson*—will accept the command of the Illinois Supreme Court in *Ingemunson* as well.

Partee in his official capacity, then, is not a "person" for Section 1983 purposes. Complaint Count I, the federal claim against Partee, is therefore dismissed.

■ As for Cook County, this Court finds the opinion of its colleague Honorable Nicholas Bua in *Stokes v. City of Chicago*, 660 F.Supp. 1459, 1462–63 (N.D.Ill.1987) wholly persuasive.[5] Because County as such plays no role in the prosecutorial activities that form the gravamen of this action, the prohibition against vicarious liability under Section 1983 (akin to the principle announced and applied in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–94, 98 S.Ct.

2018, 2035–38, 56 L.Ed.2d 611 (1978) and its numerous progeny) insulates County against any Section 1983 liability for actions taken by Assistant State's Attorneys—staffers who act solely under the supervision and control of the Cook County State's Attorney. That result is compelled not only by the obvious thrust of *Monell* and such cases but also by parity of reasoning with the status of the Sheriff of Cook County, who like the State's Attorney "is an independently-elected constitutional officer who answers only to the electorate, not to the Cook County Board of Commissioners" (*Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir.1989), citing this Court's opinion in *Thomas v. Talesky*, 554 F.Supp. 1377, 1378–79 (N.D.Ill.1983)). That means Houston and Brown cannot maintain their Count I federal claim against County either.

### Conclusion

For the reasons stated in this memorandum opinion and order, both Partee in his official capacity and County are non-suable under Section 1983 for the matters set out in the Complaint. All of Count I is therefore dismissed. And because the only federal-question claims have thus been dismissed at the outset, the plain teaching of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966) calls for dismissal without prejudice of the Count II pendent claims. This action is therefore dismissed in its entirety.

---

**4.** [Footnote by this Court] Because this Court does view *Ingemunson* as dispositive, it has since reversed its earlier interlocutory determination to the contrary in *Santiago,* and the plaintiff there has acceded to dismissal of the official-capacity claim against the State's Attorney.

**5.** *Stokes* is one of a number of decisions, including some from this Court, to the same effect.