OFFICE OF THE LAKE COUNTY STATE'S ATTORNEY, Plaintiff-Appellee, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellants.

Second District    No. 2—91—1170

Opinion filed September 30, 1992.—Rehearing denied November 17, 1992.

DOYLE, J., dissenting.

Marian McElroy, of North Chicago, appellant *pro se.*

Michael J. Waller, State's Attorney, of Waukegan (John W. Bartels IV, Assistant State's Attorney, of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:
On December 28, 1988, plaintiff, the office of the Lake County State's Attorney, filed a complaint for an order of prohibition and de-

claratory judgment in the circuit court, seeking a determination that defendant, the Illinois Human Rights Commission (Commission), lacked jurisdiction to adjudicate a charge of discrimination originally brought by defendant, Marian McElroy (claimant), against plaintiff in December 1985. McElroy was suspended from her position as an assistant State's Attorney in Lake County in December 1985 and was discharged on January 3, 1986.

In October 1988, the Department of Human Rights filed a complaint against plaintiff, alleging that plaintiff discriminated against claimant because of her race and sex and that she was suspended and discharged in contravention of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). Among other things, the Department's complaint alleged that claimant was not given the same number of trial opportunities as similarly situated white male employees; that the State's Attorney informed her that she "was not fitting in with the boys because she did not go out drinking with the boys and that she was not bubbly like another black female attorney"; that she was not promoted to the position of principal assistant State's Attorney because of her lack of experience; that the State's Attorney claimed she was suspended for ignoring the policies and objectives of the office in negotiating criminal cases and for being insubordinate to a supervisor; and that the State's Attorney's reasons for not promoting her, suspending and discharging her were pretextual.

In support of plaintiff's assertion that the Commission was without jurisdiction to adjudicate this claim, plaintiff argued that assistant State's Attorneys are not "employees" and that the office of the State's Attorney is not an "employer" as defined in the Act. See Ill. Rev. Stat. 1985, ch. 68, pars. 2—101(A), (B), 1—103(L).

On defendants' motion, the circuit court initially dismissed plaintiff's complaint, finding that the Commission had exclusive jurisdiction of the cause and that plaintiff must exhaust its administrative remedies before the Commission before seeking further review.

Plaintiff then appealed to this court, which concluded that the exhaustion of remedies doctrine did not preclude a challenge in the circuit court to determine the jurisdiction of the Commission and that the circuit court had subject-matter jurisdiction to consider plaintiff's complaint for an order of prohibition and declaratory judgment. Accordingly, the judgment was reversed and the cause remanded for further proceedings. *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n* (1990), 200 Ill. App. 3d 151.

Upon remand, plaintiff filed a motion for summary judgment, again arguing that the Commission had no jurisdiction to adjudicate

the claim because plaintiff is not an employer and claimant is not an employee as defined by the Act. Plaintiff prayed for an order of prohibition to prevent defendants from proceeding on this claim. The Commission maintained its position that it had jurisdiction to adjudicate the claim, but otherwise declined to address further, on the merits, the issue whether plaintiff and claimant met the statutory definitions of "employer" and "employee," respectively.

On September 9, 1991, the circuit court granted plaintiff's motion for summary judgment, finding that, for purposes of proceeding on the discrimination charge, claimant was not a covered employee and plaintiff was not an employer as defined by the Act. Therefore, the Commission had no authority to adjudicate the civil rights complaint. As a result of its findings, the court issued a writ of prohibition preventing defendants from proceeding on the discrimination charges.

Claimant appeals from this order, arguing that the circuit court erred in granting summary judgment for plaintiff by ruling as a matter of law that (1) she was not an "employee" as defined by the Act; and (2) the plaintiff was not an "employer" as defined by the Act. This court has treated the question as jurisdictional in *Lake County State's Attorney* (200 Ill. App. 3d at 156), and the precise question of the employer-employee relationship now presented is one of first impression in this court as it has never been answered (see *Joliet Mass Transit District v. Illinois Fair Employment Practices Comm'n* (1978), 66 Ill. App. 3d 296).

■ One of the stated purposes of the Illinois Human Rights Act is to "secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit and the availability of public accommodations; and to prevent sexual harassment in employment" and in higher education. (Ill. Rev. Stat. 1985, ch. 68, par. 1—102(A).) The Act is intended to implement State constitutional guarantees against discrimination and to assure "that all State departments, boards, commissions and instrumentalities rigorously take affirmative action to provide equality of opportunity and eliminate the effects of past discrimination in the internal affairs of State government and in the relations with the public." Ill. Rev. Stat. 1985, ch. 68, pars. 1—102(C), (D).

■ The present dispute centers on whether plaintiff is an "employer" and claimant is an "employee" covered by the Act. The pertinent provisions of the Act defining covered employers state:

"(B) Employer. (1) 'Employer' includes:

(a) Any person employing 15 or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation;

\*\*\*

(c) The State and any political subdivision, municipal corporation or other governmental unit or agency, without regard to the number of employees." (Ill. Rev. Stat. 1985, ch. 68, par. 2–101(B).)

A "person" is defined as "one or more individuals, partnerships, associations or organizations, \*\*\* the State of Illinois and its instrumentalities, political subdivisions, units of local government, legal representatives, [and] trustees in bankruptcy or receivers." Ill. Rev. Stat. 1985, ch. 68, par. 1–103(L).

■ The pertinent provisions of section 2–101(A) of the Act define "employee" in the following terms:

"(A) Employee. (1) 'Employee' includes:

(a) Any individual performing services for remuneration within this State for an employer;

(b) An apprentice;

\*\*\*

(2) 'Employee' does not include:

(a) Domestic servants in private homes;

(b) Individuals employed by persons who are not 'employers' as defined by this Act;

(c) *Elected public officials or the members of their immediate personal staffs*;

(d) Principal administrative officers of the State or of any political subdivision, municipal corporation or other governmental unit or agency." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 68, par. 2–101(A).

We address first the question whether the office of the State's Attorney is an "employer" under the Act. Plaintiff argues that it is neither a "person" defined by the Act, nor a legal representative, or a unit of (local) government. Further, plaintiff argues, in a *non sequitur and without explanation*, that, because the State's Attorney is a constitutional officer of the State, he is not an employer pursuant to section 2–101(B) of the Act. Plaintiff appears to avoid arguing specifically whether it is the legal equivalent of the State itself. The thrust of plaintiff's argument appears to be that it is not specifically enumerated as an employer by the Act (and somehow falls through the cracks).

In general support of its position, plaintiff cites *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, an irrelevant case dealing with the common-law immunity defense applicable in tort law; there, the plaintiff mistakenly sued the Attorney General and three other officials in their *individual* capacities rather than suing the employer, the real party in interest—the State of Illinois. The common-law immunities of public officials described in *Morton* have nothing to do with the statutory cause of action under consideration here, where, pursuant to the State Constitution (see *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537; see also *Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, 959-60), the legislature has specifically authorized a cause of action against the sovereign State, its political subdivisions, municipal corporations, or governmental units and agencies. The claimant here has sued the office of the State's Attorney as an entity of the State. The question before us does not concern the absolute immunity doctrine discussed in *Morton*, and we need not discuss it further. Indeed, the State's Attorney specifically argued at the hearing on his motion for summary judgment that he was not interposing the defense of absolute immunity.

For purposes of suit, if the office of the State's Attorney is not the equivalent of the State or one of its political subdivisions, governmental units, instrumentalities or agencies, what is its identity? We will endeavor to answer this question. While we agree with the State that the State's Attorney is an elected constitutional officer (*People v. Thompson* (1980), 88 Ill. App. 3d 375, 377; Ill. Const. 1970, art. VI, §19), this certainly does not end the inquiry. The Attorney General, another constitutional officer, was, at common law, the law officer of the English crown and its chief representative in the courts. (See *People ex rel. Kunstman v. Nagano* (1945), 389 Ill. 231, 248-49.) Of course, under our form of government, all the prerogatives which pertained to the crown of England under the common law are now vested in the People. (*People ex rel. Board of Trustees of the University of Illinois v. Barrett* (1943), 382 Ill. 321, 346.) Historically, the State's Attorney has had rights and duties analogous to or largely coincident with the Attorney General in representing the county or the People in matters affected with a public interest. (*Nagano*, 389 Ill. at 249.) While the State's Attorney has previously been characterized as a county officer (*Ashton v. County of Cook* (1943), 384 Ill. 287, 297), our supreme court now treats the State's Attorney as a member of the executive branch and as a State, rather than a county, officer. *Ingemunson v. Hedges* (1990), 133 Ill. 2d 364, 369.

The office of the State's Attorney, then, is part of the executive branch of State government, and the powers exercised by that office are executive powers. (*Thompson*, 88 Ill. App. 3d at 377.) Among other things, it is the duty of the State's Attorney to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned; to commence and prosecute all actions and proceedings brought by any county officer in his official capacity; to defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county; and "[t]o assist the Attorney General whenever it may be necessary." Ill. Rev. Stat. 1985, ch. 14, pars. 5(1), (3), (4), (8).

■ The real question before us is whether, for purposes of this discrimination suit, the office of the State's Attorney is indeed the legal equivalent of the State itself. We readily conclude that it is. First, the definition of "person" in the Act shows that the legislature meant to include within the ambit of this legislation the State and its instrumentalities, political subdivisions, units of local government and legal representatives. In the context of the stated purposes of the Act, this broad definition evinces a legislative intent to include as a "person" the State or any governmental entity acting on its behalf.

Second, the more specific provision defining "employer" also broadly includes the State and any political subdivision, municipal corporation or other governmental unit or agency without regard to the number of employees—in other words, all State governmental entities. A broader definition hardly seems possible. Obviously, when a State official is sued in his or her official capacity, the official is a real, natural person. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [Citation.] As such, it is no different from a suit against the State itself." *Will v. Michigan Department of State Police* (1989), 491 U.S. 58, 71, 105 L. Ed. 2d 45, 58, 109 S. Ct. 2304, 2311 (holding that, because the eleventh amendment bars suits against the State unless the State has waived immunity, neither the State nor its officials acting in their official capacities are "persons" under the Federal civil rights statute (42 U.S.C.A. §1983 (West 1981)); see *Houston v. Cook County* (N.D. Ill. 1990), 758 F. Supp. 1225, 1226.

In adopting the Act and its forerunner (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*), the legislature intended to give its remedial provisions the widest constitutional application that could be achieved. (*Fair Employment Practices Comm'n v. Rush-Presbyterian-St. Luke's Medical Center* (1976), 41 Ill. App. 3d 712, 716.) We see no reason

why the office of the State's Attorney should be allowed to circumvent the legislative intent to cover State governmental employees by the use of a mere pleading device: that the State's Attorney is not specifically enumerated in the Act.

In view of our discussion, we find that the office of the State's Attorney exercises certain executive powers of the sovereign as established by our State Constitution and statutes, and we hold that, for all practical purposes, in a suit of the kind before us, the office of the State's Attorney is the legal equivalent of the State itself and is an "employer" as defined in the Act. To conclude otherwise would effectively negate the stated purposes of the Act whenever a public employer-defendant claims that its particular State office or official has not been specifically enumerated in the Act.

■ The next question is whether claimant is a section 2—101(B) "employee" entitled to protection from discrimination under the Act. We hold that she is such an employee. Plaintiff argues that claimant, an assistant State's Attorney, is exempted from the protection of the Act because the Act does not include elected public officials or "members of their immediate personal staffs" (Ill. Rev. Stat. 1985, ch. 68, par. 2—101(A)(2)(c)). Plaintiff relies on the loosely analogous Federal statutory provisions of title VII of the Civil Rights Act of 1964 (42 U.S.C.A. §2000e(f) (West 1981)) and earlier cases interpreting the Federal title VII exemption in relation to District Attorneys in particular States (see, e.g., *Teneyuca v. Bexar County* (5th Cir. 1985), 767 F.2d 148; *Ramirez v. San Mateo County District Attorney's Office* (9th Cir. 1981), 639 F.2d 509; *Wall v. Coleman* (S.D. Ga. 1975), 393 F. Supp. 826).

Plaintiff also relies on *Livas v. Petka* (7th Cir. 1983), 711 F.2d 798. Although *Livas* described certain attributes of the office of State's Attorney in the context of a dismissal of an assistant State's Attorney for his conduct or because of alleged, pretextual political reasons, it did not decide whether an assistant State's Attorney was an exempt employee under the Federal "personal staff" exemption, and the case is not applicable here. While we have considered the cases cited by plaintiff, we point out that, in construing our own State statutes, we are not bound by Federal court decisions other than, in appropriate cases, those of the United States Supreme Court; although such decisions are entitled to respect, they have only advisory effect upon the decisions of this court. *City of Chicago v. Loitz* (1973), 11 Ill. App. 3d 42, *aff'd* (1975), 61 Ill. 2d 92.

Under the exempt employee provisions of title VII of the Federal Civil Rights Act, an employee "shall not include any person elected to

public office in any State or political subdivision of any State by the qualified voters thereof, or *any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.* The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." (Emphasis added.) (42 U.S.C.A. §2000e(f) (West 1981).) We observe in passing that previously exempt members of the personal staffs of State and local elected officials now have a remedy under Federal law for acts of discrimination committed against them. (See 2 U.S.C.A. §1220 (West Supp. 1992)(effective Nov. 21, 1991).) As can readily be seen, the language of our State statute ("immediate personal staffs") differs from that of the Federal provision, a difference we shall explore later.

The legislative history of title VII and its extension to public officials demonstrates that Congress intended the exemptions from "employee" status to be narrowly construed. See, *e.g., Anderson v. City of Albuquerque* (10th Cir. 1982), 690 F.2d 796, 800 (where staff director of human rights board dealt primarily with other appointees, had minimal interaction with mayor who did not directly appoint director and director did not formulate policy or advise mayor, there was no intimate and sensitive association or immediate personal relationship required by the exemption); *Bostick v. Rappleyea* (N.D.N.Y. 1985), 629 F. Supp. 1328, 1332 (legislative budget analyst sued State assemblymen under title VII; her contacts were mostly with other staff members; although she engaged in drafting, research and providing input in formulating policy and she was supervised by an administrator, she did not occupy sensitive and intimate position or appear to be "frontline adviser" exempt from employee status), following *Gearhart v. Oregon* (D. Or. 1976), 410 F. Supp. 597, 600, 601 (former deputy legislative counsel to State whose duties included drafting, research and other assistance to members of legislature was more than "just a law clerk" but was not a "first line adviser" so as to establish "immediate" relationship which Congress deemed necessary to invoke very limited exemption from strong policy of ending impermissible discrimination in public employment).

When title VII was amended in 1972 to apply to State and local governments and to provide for the personal staff exemption, Senator Ervin first proposed that the definition of employee exclude only officials who were elected and their legal and constitutional advisors, that is, any elected person or " 'any person chosen by such person to ad-

vise him in respect to the exercise of the constitutional or legal powers of his office.' " (*Equal Employment Opportunity Comm'n v. State of Vermont* (2d Cir. 1990), 904 F.2d 794, 798-99, quoting 118 Cong. Rec. 4483 (1972).) Senator Williams suggested that the exception be expanded to include the elected official's personal staff, saying the purpose of the amendment was " 'to exempt from the coverage those who are chosen by the Governor or the mayor or the county supervisor, whatever the elected official is, *and who are in a close personal relationship and an immediate relationship with him.* Those who are his first line of advisers. Is that basically the purpose of the Senator's amendment?' " (Emphasis in original.) (*Vermont*, 904 F.2d at 799, quoting 118 Cong. Rec. 4492-93 (1972).) Senator Ervin agreed that it was.

Senator Javits urged that further study be given to the scope of the "adviser" phrase, observing that, when he was Attorney General of New York he had some 500 employees, some 200 of whom were lawyers and that he would have to have "overnight" to check into what would be the status of that large group of employees. He concluded by saying, " 'I realize that the Senator is seeking to confine [the exemption] to the higher officials in a policymaking or policy advising capacity.' " (*Vermont*, 904 F.2d at 799, quoting 118 Cong. Rec. at 4097.) Later Senator Javits added that, by immediate advisors, he was thinking " 'more in terms of a cabinet, of a Governor who would call his commissioners a cabinet, or he may have a cabinet composed of three or four executive officials, or five or six, who would do the main and important things.' " (*Vermont*, 904 F.2d at 799, quoting 118 Cong. Rec. at 4493.) The section that eventually became section 2000e(f) was reported out of conference with the following explanation:

> " 'It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions *at the highest levels* of the departments or agencies of State or local governments, *such as cabinet officers*, and persons with comparable responsibilities at the local level.' " (Emphasis in original.) *Vermont*, 904 F.2d at 800, quoting Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 2d Sess. 1972, *reprinted in* 1972 U.S. Code Cong. & Admin. News 2180.

An example of a case involving a narrow construction of the exemption in a judicial setting is *Goodwin v. Circuit Court* (8th Cir. 1984), 729 F.2d 541. There, the court narrowly construed the exemp-

tion in holding that a former judicial hearing officer in a State circuit court was entitled to sue under title VII for sex discrimination when she was transferred by the presiding judge of the juvenile court from the position of hearing officer to the position of staff attorney. The court noted that the "immediate adviser" exemption was intended to apply to those employees who are in a close personal relationship to the official. The court explained that the complainant and the judge had very few personal contacts, the position did not entail the sort of personal relationship contemplated in the exemption, and the hearing officer job itself required the complainant to assert her independent judgment free from any direction from others. When she offered advice to the judge, it was of a formal, detached nature, from one judicial officer to another. *Goodwin*, 729 F.2d at 548.

Probably the earliest reported case construing the Federal exemption in relation to an assistant District Attorney is *Wall v. Coleman* (S.D. Ga. 1975), 393 F. Supp. 826, a case cited by plaintiff. There, the court relied heavily on dictionary definitions of the phrase "personal staff" in examining the duties of the assistant District Attorney under Georgia law and applying the exemption to this position without citation to precedent. The court concluded that the assistant District Attorney was a member of the District Attorney's personal staff and was exempt from the protection of the Federal Act. The court noted that the circuit court in which the District Attorney served had a county population of 187,816 and had a superior court served by three judges. By law, the District Attorney could appoint a minimum of three assistant District Attorneys and could delegate to each of them all or so much of the general authority, duties and responsibilities of his office as he wished to delegate. The meager facts seem to suggest that the office was a relatively small one by present standards, and there is no indication that there was a hierarchy within the office.

In *Ramirez v. San Mateo County District Attorney's Office* (9th Cir. 1981), 639 F.2d 509, a Mexican-American who was not hired as a deputy District Attorney for the county was found to have no claim under the personal staff exemption. The court relied on *Wall* and concluded that the position of the deputy District Attorney was that of a member of the "personal staff" of an elected official because deputy District Attorneys served at the pleasure of their superior, the District Attorney, who had plenary powers of appointment and removal; the deputies performed to the District Attorney's personal satisfaction and because of the highly sensitive and confidential nature of the work which deputies performed in representing the District Attorney, there was a level of personal accountability to the elected official

which exempted them from the protection of title VII. Again, detailed facts surrounding the actual working conditions in the office are meager, and it must be presumed that there was direct interaction between the deputy and his superior.

In *Teneyuca v. Bexar County* (5th Cir. 1985), 767 F.2d 148, the court was called upon to determine whether summary judgment for the defendants was proper where it was alleged that the assistant criminal District Attorney was not an "employee" entitled to the protection of title VII. Plaintiff claimed she had been denied a position as assistant county criminal District Attorney on the basis of her sex. The District Attorney, an elected official, presented some evidence in support of his motion for summary judgment that he had wide discretion in hiring and firing such employees, but the plaintiff failed to present any evidence in response to the motion as required under the Federal rules of civil procedure. The court pointed out that the highly factual nature of the inquiry necessary to a determination of the "personal staff" exemption did not lend itself well to a disposition by summary judgment, but the court ultimately concluded that plaintiff failed to demonstrate the presence of a material factual issue so as to defeat defendants' motion for summary judgment.

The *Teneyuca* court set forth a nonexhaustive list of factors that could be used in determining whether a complainant falls within the "personal staff" exemption. These factors include: (1) whether the elected official has plenary powers of appointment and removal; (2) whether the person in the position at issue is personally accountable to only that elected official; (3) whether the person in the position at issue represents the elected official in the eyes of the public; (4) whether the elected official exercises a considerable amount of control over the position; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the person filling the position. (*Teneyuca*, 767 F.2d at 151.) Unfortunately, the court did not engage in any substantial application of those factors to the very limited facts stated in the case. Thus, *Teneyuca* has little persuasive value on the limited facts presented, but it does provide insight into the factors that may be considered.

We find that *Wall, Ramirez,* and *Teneyuca* are limited by their facts, and, additionally, these cases seem to have construed the exemption more broadly than we believe it should be in the case of our own State statute, which uses the term "immediate personal staff." These Federal cases do not seem to give much weight to the hierarchical structure of the office of the State's Attorney now common to-

day and noted, but not expressly applied, in *Teneyuca*. They seem to rely too much on the wide discretion of the official to hire and fire subordinates. This discretion of a top-ranking official is found in most at-will employment situations and, without more, is not determinative of whether the relationship between the official and the subordinate is close or intimate.

Our research of the legislative history of the Illinois statute sheds no light on the intent of the term that was used. The language "immediate personal staff" first appears in the 1963 version (Ill. Rev. Stat. 1963, ch. 48, par. 852(c)) of the amended Fair Employment Practices Act which was enacted in 1961 (Ill. Rev. Stat. 1961, ch. 48, par. 851 *et seq.*). Because of the lack of available history from that time period, we are uncertain of the provenance of the term; it seems to antedate the language used in the Federal provision. In any case, the use of the term "immediate personal staff" rather than "personal staff" appears to create an even narrower exemption than might be found in the Federal provision.

Additionally, exceptions or provisos in a statute, being designed to qualify or limit what is affirmed in the body of an act, should be strictly construed; it is a fundamental rule of statutory construction that each word, clause, and sentence in a statute must, if possible, be given some meaning. (*Mid-South Chemical Corp. v. Carpentier* (1958), 14 Ill. 2d 514, 519; see *Thoman v. Village of Northbrook* (1986), 148 Ill. App. 3d 356, 358.) The use of the word "immediate" is a restrictive qualifier, and the word implies a legislative intent to exempt only those employees who interact directly with the elected official without some intervening layer of supervisors. In its plain and ordinary sense, "immediate" means "acting or being without the intervention of another object, cause, or agency" or, when applied to persons, "having no individual intervening: being next in line or relation." Webster's Third New International Dictionary 1129 (1986).

Our research has also disclosed a more recent and more closely analogous case interpreting the Federal provision using the narrower construction we now adopt in construing our own statute. In *Rabouin v. Colorado Department of Law* (D. Colo. 1990), 754 F. Supp. 171, a former assistant Attorney General brought suit against the Colorado Department of Law and the Attorney General of Colorado and others. She alleged that she was passed over for a promotion, was denied opportunities for advancement, and was subject to a racially hostile environment. She was not subject to the civil service laws or personnel rules of the State of Colorado. In the context of a summary judgment proceeding, the court construed the Federal "personal staff" exemp-

tion of title VII narrowly, stating that it is intended to exempt those who are chosen by an elected official and who are in a close, personal, and *immediate* relationship with the elected official. It applies only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official. *Rabouin*, 754 F. Supp. at 174, citing *Owens v. Rush* (10th Cir. 1981), 654 F.2d 1370, 1375.

The *Rabouin* court considered that plaintiff was the most junior level of attorney in the office; she was several supervisory levels below the Attorney General and had no policy-making authority. Far from being a "first line advisor" to the Attorney General, plaintiff was but one of some 140 staff attorneys in the office, and she had minimal contact with the Attorney General. The court concluded that plaintiff made a sufficient showing of a factual dispute regarding the immediate and personal relationship required under the narrow exemption. 754 F. Supp. at 174.

In the case at bar, the parties agree that claimant was not a supervisor, and plaintiff concedes this in his brief. At the hearing on the initial motion to dismiss held on August 21, 1989, the State's Attorney stated that claimant was fired because of the manner in which she negotiated a case contrary to the wishes of her supervisors. He stated that "assistant state's attorneys [*sic*] do not set policy in the office." At the hearing on the motion for summary judgment, the State's Attorney agreed that claimant was not a supervisor and agreed to the statement made in her answer to the complaint which stated: "Defendant was never a supervisor, unit or division chief or a deputy chief in any of the Divisions of the State's Attorney's Office." The statement also averred that claimant "did not participate in policy formation or the implementation of the broad goals of the office," nor did she "make decisions about the operation of the office."

The State's Attorney argued that *all* assistant State's Attorneys were members of the immediate personal staff whether they were supervisors or not and that they affected policy regardless of their position within the office. Plaintiff equates policy-making as implicit in the duties of an assistant State's Attorney as an agent of his office in the ordinary handling of cases. The State's Attorney agreed at the hearing that there was no question of fact, but that there was a question of law and that the motion could be decided by the court on the basis of the claimant's statement quoted above.

Our narrow construction of the Illinois statute and the persuasiveness of *Rabouin* lead us to conclude that, on the agreed facts, claimant was not a supervisor and was therefore not a "first line advisor."

The pleadings, arguments, and undisputed facts in the record show that there were intervening supervisors between her and the State's Attorney. She was not in a close, personal and *immediate* relationship with the State's Attorney and did not operate at the highest level of policy-making staff in the office. As a matter of law, we hold that claimant was not exempt from the protection of the Act since she was not a member of the "immediate personal staff" of the State's Attorney. She should therefore be allowed to pursue her claim before the Commission.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings before the Illinois Human Rights Commission.

Reversed and remanded.

BOWMAN, J., concurs.

JUSTICE DOYLE, dissenting:

I respectfully dissent from the majority's conclusion that the claimant was not a member of the "immediate personal staff" of the State's Attorney. In doing so, I readily concede that the Act has a broad remedial purpose and that the exemption at issue should be given narrow application. Nevertheless, it is evident that the legislature recognized that individuals occupying certain positions should not be afforded relief under the Act. Just as we are careful to effectuate the broad remedial purpose of the Act, so must we be deliberate in giving meaningful application to those expressly crafted exceptions to that purpose.

Section 2—101(A)(2)(c) of the Act exempts members of the immediate personal staff of an elected public official. Unfortunately, there is no statutory definition of the phrase "immediate personal staff." The majority emphasizes the difference between the language of the Act and a similar exemption in title VII wherein the term "personal staff" is used. The opinion characterizes the word "immediate" as a restrictive qualifier and concludes that the word implies a legislative intent to exempt only those employees who "interact directly with the elected official without some intervening layer of supervisors." I cannot attribute such a narrow, mechanical meaning to the term "immediate." The question of whether someone is a member of the immediate personal staff cannot and should not be determined by such a limited, although superficially tempting, litmus test. The mere intervention of a supervisor, or lack thereof, will not, in many cases, dic-

tate the true relationship between the claimant and the State's Attorney, which relationship I believe to be critical in deciding whether to deny certain individuals the protection of the Act.

I am also troubled by the implication present in the majority opinion that the office of State's Attorney is commonly structured in a hierarchical fashion. While that may be true in some more populated counties in our State, by and large, the majority of counties have much smaller and more intimate State's Attorney's offices which lack the structure of their larger counterparts. More importantly, there is a broad range of size and organization present in the various State's Attorney's offices statewide. In some there are many intermediate supervisors; in some there are a few; and in some there are none.

This brings me to my second concern with the approach espoused by the majority. It does not establish a rule that is applicable across the board. Those assistant State's Attorneys who serve in a small office with no supervisor between them and the State's Attorney will be excluded from the protection of the Act while assistant State's Attorneys performing essentially the same functions in larger offices will be able to obtain relief under the Act. I cannot believe that was a result intended by the legislature in creating the exemption at issue here.

Furthermore, pursuant to the majority's holding, we may now be generating a potential field of litigation for the purpose of determining whether someone is a supervisor or subject to supervision in a variety of different organizational settings throughout the various State's Attorney's offices. I believe the better approach is to resolve the question in terms of the general relationship of assistant State's Attorneys to State's Attorneys as defined by statute and the practical realities of the State's Attorney's office.

Section 4—2003 of the Counties Code provides that assistant State's Attorneys are "to be named by the State's attorney of the county, and when so appointed shall take oath of office in like manner as State's attorneys, and shall be under the supervision of the State's attorney." (Ill. Rev. Stat. 1989, ch. 34, par. 4—2003.) The legislative purpose in creating the office of assistant State's Attorney was to provide an official who should have full power to act in the case of the absence or sickness of the State's Attorney, or in the case of his being otherwise engaged in the discharge of the duties of office, in the same manner and to the same extent that the State's Attorney could act. (*People v. Nahas* (1973), 9 Ill. App. 3d 570, 576.) An assistant State's Attorney is generally clothed with all the powers and privileges of the State's Attorney, and all acts done by him or her in that capacity

must be regarded as if done by the State's Attorney. *People v. Audi* (1978), 61 Ill. App. 3d 483, 485; *Nahas*, 9 Ill. App. 3d at 575-76.

Our supreme court has held that an assistant State's Attorney is not a mere agent to perform a particular act or duty but is an officer for the performance of the general duties of the office of State's Attorney. (*People ex rel. Landers v. Toledo, St. Louis & Western R.R. Co.* (1915), 267 Ill. 142, 146.) The position of assistant State's Attorney is an office and not a mere employment. (*People ex rel. Landers*, 267 Ill. at 145.) Assistant State's Attorneys exercise some portion of the sovereign power of the State, and the duties of the position are continuous without regard to the particular person who holds the office. *People ex rel. Landers*, 267 Ill. at 145-46.

I believe this foregoing language properly characterizes the position of assistant State's Attorney as an integral part of the State's Attorney's office and one that occupies a status comparable to the State's Attorney in many respects. Assistant State's Attorneys represent the State in criminal and civil matters, exercise discretion in various aspects of a criminal prosecution, maintain contact with the public and work directly with other branches of local government such as law enforcement, the court system and county officials.

It is apparent that the position of assistant State's Attorney, whether in a rural or metropolitan county, is one uniquely tied to the office of State's Attorney. The State's Attorney depends upon the assistant State's Attorneys to carry out under public scrutiny many functions that would otherwise be undertaken by himself or herself. In my view, it is this closely dependent partnership which transcends the usual concept of an employer-employee arrangement and sets the position of assistant State's Attorney apart from other employees in the State's Attorney's office. In light of the nature of the position of assistant State's Attorney and the unique relationship of that position to the State's Attorney, I would conclude that an assistant State's Attorney is a part of the State's Attorney's immediate personal staff and thus exempt from the provisions of the Act.

Finally, I disagree with the majority's partial reliance on Federal court decisions construing a similar exemption under title VII. Because the two acts are not the same and, as the majority recognizes, are only "loosely analogous," I would not primarily be guided by the Federal decisions construing title VII. This is so notwithstanding the fact that of those cases addressing the question all have held that an assistant State's Attorney is part of the "personal staff" and thus exempt from title VII coverage. See *Teneyuca v. Bexar County* (5th Cir. 1985), 767 F.2d 148; *Ramirez v. San Mateo County District Attor-*

*ney's Office* (9th Cir. 1981), 639 F.2d 509; *Wall v. Coleman* (S.D. Ga. 1975), 393 F. Supp. 826.

For the foregoing reasons, I would affirm the order of the circuit court granting summary judgment in favor of the State's Attorney of Lake County.